STATE v. CHARLES ELOFSON.[1]

May 2, 1902.

Nos. 12,908—(19).

## City of Minneapolis—Inspection of Dairy Herds.

That part of the so-called milk ordinance of the city of Minneapolis which provides that if the dairy or dairy herds and animals of any applicant for a license, or the dairy or dairy herds and animals of the person from whom such applicant obtains his milk, are located outside of the county of Hennepin, the dairy and dairy herds and animals must be inspected by some local veterinarian, acceptable to the city health commissioner, residing in the county where said animals are located, "without expense to the city of Minneapolis," and therefore at the expense of the owner or applicant, is invalid, because, in effect, it compels the payment of a license fee, or a part of the expense in procuring the license, by the owners of the herds or the venders of the milk. It is directly opposed to that part of the enabling act (Laws 1895, c. 203) which prohibits the passage of any ordinance in conflict with that act.

## Same—Basis of Classification.

If it be possible to classify herds of animals so as to compel the owners of some herds, who have procured licenses under G. S. 1894, §§ 7004, 7005, to bear the expense of inspection required by a city ordinance, counties cannot be made the proper basis for such classification.

Defendant was convicted in the municipal court of Minneapolis, Dickinson, J., of selling milk without a license from the city health commissioner, in violation of an ordinance of the city of Minneapolis. From an order denying a motion for a new trial defendant appealed. Reversed.

*John W. Arctander*, for appellant.

*Frank Healy* and *Edward F. Waite*, for the State.

COLLINS, J.

This appeal involves the validity of one of the ordinances of the city of Minneapolis. This ordinance provides for the issuance of licenses to venders of milk within the city limits, and, as a condition precedent to the securing of licenses as venders, that the

[1] Reported in 90 N. W. 309.

animals producing the milk to be sold must be inspected. Such as are located within the county of Hennepin are to be inspected under the direction and supervision of the city health commissioner, free of charge. If the animals from which the applicant for the license obtains his milk are located outside of Hennepin county, they must be inspected by some local veterinarian, acceptable to the city health commissioner, residing in the county where the herds are located, and the inspection must be without expense to the city of Minneapolis. Unless this inspection is had, no license can be issued to the applicant, and he is prohibited from selling.

The defendant kept no cows himself, but secured his milk from about two hundred fifty animals kept by persons in counties other than Hennepin. The owners of these animals refused to bear the expense of inspection themselves, and therefore it devolved upon defendant to pay the charges of the veterinarian,—about fifty cents per animal in this particular case; in the aggregate, about $125. This charge might be much more per head, for no fee is prescribed, nor could there be in this ordinance. The facts were agreed upon, and, among other things, it was stipulated that the defendant had been duly licensed by the state dairy commissioner to sell milk within the limits of the city of Minneapolis, for which he had paid the required fee, in accordance with the provisions of G. S. 1894, §§ 7004, 7005.

It is contended by defendant's attorney that the ordinance is void as to persons selling milk obtained from dairy herds outside of Hennepin county, for four reasons, as follows:

"1. For the reason that it is ultra vires, unauthorized, and clearly in the teeth of the express prohibition of the enabling act. Laws 1895, c. 203.

"2. For the reason that the provisions of the ordinance complained of come under the inhibition of the enabling act, in that they are in conflict with the spirit and letter of G. S. 1894, §§ 7004, 7005.

"3. For the reason that the said ordinance as amended is unreasonable, arbitrary, and unlawfully discriminates between dairies and dairy herds located in Hennepin county and those located in adjoining counties.

"4. For the reason that the ordinance, as amended, operates in restraint of trade."

But, as we regard this case, it is unnecessary to consider all of these points. Under that part of the first section of said chapter which empowers city councils to pass milk ordinances, and to authorize their boards of health to enforce all laws and ordinances relating to the production and sale of milk and the inspection of dairy herds producing milk for sale or consumption within said city limits, it is clear that a city council may, by ordinance, require the inspection of dairy herds outside of the city limits. In fact, one contention covered by the first of the above objections might as well be made against that part of the ordinance which requires and provides for inspection of all herds in Hennepin county, whether kept within or without the city limits, for we take judicial notice of the fact that the city of Minneapolis does not include all of Hennepin county, and that a very large part of the same is outside of the city limits. One branch of this subject is fully discussed and completely disposed of in State v. Nelson, 66 Minn. 166, 68 N. W. 1066, a Minneapolis case, in which was examined the power of its council to adopt such reasonable police regulations as to outside dairy herds as would prevent the sale of unwholesome milk within the city. As was there said, the inspection required of herds outside of the city limits is wholly voluntary on the part of the owner of the dairy or dairy herds, and if "he does not choose to submit to such inspection the result merely is that he, or the one to whom he furnishes milk, cannot obtain a license to sell milk within the city." The conclusion was that the ordinance then in question, since amended and now before us, had no extraterritorial operation, and that there had been no attempt to give it any such effect, the only subject upon which it operated being the sale of milk within the city limits. The right of the council to require inspection of outside herds seems to be settled by the Nelson case.

It is argued by counsel for defendant that indirectly, by reason of this provision of the ordinance, a license fee is actually charged by the city as to herds outside of Hennepin county, which charge is prohibited by the enabling act, and, as a consequence, that there

is a direct conflict of authority between the statute and the city ordinance.

As before stated, it was stipulated that the defendant had paid the license fee exacted by the state. If this ordinance is in opposition to that part of the statute which prohibits any ordinance which conflicts, it cannot be upheld. This was settled in City of St. Paul v. Peck, 78 Minn. 497, 81 N. W. 389. In that case there was involved a St. Paul ordinance which provided for a direct charge of fifty cents for the inspection of each animal, and it was held void, because in conflict with that part of the state law requiring a license from the dairy commissioner. It was then said (referring to the law of 1895) that "the statute expressly provides that ordinances passed thereunder shall not conflict with any of the laws of the state. The state granted defendant a license under the general statutes for the term of one year, and the city, in effect, annuls it, and destroys the privileges conferred thereby, by refusing him a city license except upon payment of an inspection fee. Here we have a square conflict between the authority of the state and of the city." It was then distinctly laid down that the 1895 statute withheld from cities the right to impose any fee, either for inspection or for the license, and, further, that "the inspection is necessary to enable the licensing power to determine whether the applicant is entitled to a license, and it necessarily follows that the expense of ascertaining this preliminary fact is a part of the expense of the license."

The only difference between the St. Paul ordinance and the present one is that all dealers in milk produced by herds kept outside of Hennepin county, or the owners of such herds, have imposed upon them the burden of paying all charges for inspection to the veterinarian who does the work, and these charges may exceed in amount fifty cents per animal exacted by the invalid St. Paul ordinance, while owners of herds kept within the limits of Hennepin county, and venders of milk produced by the same, are exempted from this burden. It is borne by the city.

The main question is whether the inspection fee or charge which must be paid by the owners of, or the venders of milk produced by, herds outside of Hennepin county is, to all intents and purposes,

a license fee, or part of the expense of the license. If it is, that part of the ordinance which distinguishes and discriminates between herds inside of the boundary lines of Hennepin county and those outside must be declared void, because in conflict with the statute.

The inspection of outside herds, according to the ordinance, must be under the supervision of the city health commissioner. No matter what it is styled, or how the charge therefor is collected, it is part of the expense imposed upon the owner of the animal, or vender of the milk, as a condition to his securing a license. Without the inspection he cannot obtain a license, and without incurring the expense of the inspection none can be had. The inspection and expense thereof are made necessary, in order that the council may determine whether or not the applicant is entitled to a license. How can it be plausibly maintained that the cost of ascertaining this preliminary fact is no part of the expense of procuring the license? It cannot be asserted without calling the outlay something else than cost or expense. If these provisions of the ordinance were applicable to herds in the city, no one would assert their validity, and by what reasoning can they be held valid simply because the herds are outside of the limits of the county in which the city is located? The actual location of one of these outside herds may be, in fact, just over the line of Ramsey county, not a foot away from the city limits, and another might be in Anoka county, not six miles from the City Hall, and another in Dakota county, not ten miles distant,—all three herds subject to these objectionable provisions,—while other herds might be twenty miles from the city limits, but within Hennepin county, and, under the ordinance, their owners are relieved of this expenditure. As a matter of fact, a considerable portion of both Anoka and Dakota counties, and all of Ramsey, are nearer the city limits than is one-fourth of Hennepin county. If it were possible to classify herds so as to compel the owners of some to bear the expense of inspection, counties could not be the proper basis for classification, for there is no apparent natural reason, and no necessity, for the adoption of a county line as the limit or bounds for free inspection.

It is impossible to avoid the conclusion that the city has at-

tempted to do by indirect means, by compelling inspection of outside herds at the expense of private individuals, what it could not do directly. The fact that the ordinance distinguishes between that part of Hennepin county which lies outside of the city limits and other adjoining counties emphasizes all that has been said as to this encroachment upon the enabling act. Another suggestion: Outside inspection is confined to local veterinarians residing in the county wherein the animals are located, and the one selected must be satisfactory to the health commissioner. It places it within the power of the latter to prevent any inspection, and, if there be no veterinarian residing in the county, it is impossible to comply with the ordinance. We regard these regulations as unreasonable, and certainly they unlawfully discriminate between persons entitled to equal privileges. Any conviction predicated thereon cannot be upheld.

Order reversed.