**CITY OF WILMINGTON, Appellant**

v.

**Maribeth L. MINELLA, Appellee.**

**Civ. A. No. 04A–10–008–JOH.**

Superior Court of Delaware, New Castle County.

Submitted: Feb. 2, 2005.
Decided: March 17, 2005.

Alex J. Mili, Jr., City of Wilmington Law Department, Wilmington, DE, for the City of Wilmington, Appellant.

Maribeth L. Minella, Pennsylvania, Appellee.

### *MEMORANDUM OPINION*

HERLIHY, Judge.

The City of Wilmington appeals from a Court of Common Pleas judgment against it in a civil proceeding involving the traffic signal enforcement program. The trial court held that the City had established the requisite statutory elements of a prima facie case. But the Court also held that defendant Maribeth Minella, by her cross-examination and without introducing any other evidence, had overcome that case.

A vehicle owned by Maribeth Minella was photographed going through a red light in the City. She invoked the statutory procedure to contest the violation and asked for a trial. Such proceedings are civil. At any such trial, including this one, the City has certain statutorily prescribed evidence it must produce to meet a number of elements to make a prima facie case. The court below held that the City had met that burden.

The statute creating this presumption also prescribes two explicit ways to overcome the prima facie case. Minella presented no evidence to meet either of those two means of rebuttal. Her only evidence

was by cross-examination of the City's witness. It and his answers were irrelevant to those means of rebutting the prima facie case. The trial court, however, held that such cross-examination raised contrary matters and was sufficient to overcome the City's prima facie case.

The issue before this Court is whether in a civil proceeding where a statutory prima case has been made, such case can be rebutted by evidence not relevant to the express statutory means for such rebuttal. This Court holds that it cannot. When holding that it could, the trial court erred as a matter of law and its decision is **REVERSED.**

### Facts

The City has a contract with ACS State and Local Solutions to install and maintain self-calibrating photo enforcement cameras at various street intersections. On September 25, 2003, such a camera was in operation at Pennsylvania and Woodlawn Avenues in the City.

On that date, the camera photographed a vehicle bearing a Pennsylvania license plate numbered DXL9396 failing to stop at a red light signal at that intersection. The camera took two color photographs of the vehicle in question which were admitted at trial without objection. They are 8 × 10 inches. The two photographs are date and time stamped and clearly also indicate a red traffic signal facing the direction of travel of that Pennsylvania vehicle. The first photograph (Plaintiff's Exhibit # 1) shows the Minella vehicle in question. It has not reached the intersection and not reached the clearly marked white stop line on Pennsylvania Avenue. Nevertheless, the photograph shows the light had already been red for .3 seconds. The evidence was that the vehicle had passed the "stop bar" which is a sensor embedded in the street prior to marked stop line.

In the second photograph (Plaintiff's Exhibit # 2) the same vehicle is in the middle of the intersection. By that time, the red light had been indicating for .8 seconds. The vehicle's speed shows as 40 m.p.h. The photographs also show the yellow light had shown for four seconds prior to the red signal coming on. A third photograph was admitted into evidence (Plaintiff's Exhibit # 3), also without objection, and it is a blow up from Exhibit 1. The third photo clearly shows the license plate of the offending vehicle. The plate is legible in Exhibit # 1, too.

All the pictures are quite clear.

According to Pennsylvania Division of Motor Vehicles, on the date in question, Pennsylvania license plate numbered DXL9396 belonged on a vehicle registered to Minella (and a Frank P. Minella). A traffic citation was issued and sent to the Minellas.

In the trial of this matter the City produced one witness, Jason Parker. He is a systems tech supervisor for ACS. He explained the procedure for installing the camera, how it is attached to a set of wires embedded in the street, and how a technician retrieves the film. He testified about the process the film goes through to get developed. Parker also said that once the pictures are developed, an ACS representative examines them to make sure any violations are not the result of some action set in motion by an emergency vehicle.

Once the determination is made that there is no other cause for the violation, ACS forwards the necessary information to the City. A City employee checks the information and determines that a violation occurred. After that occurs, the employee signs a certification and it along with the citation are sent to the registered owner(s).

A citation was sent to Frank and Maribeth Minella as registered owners of the vehicle in question. The citation and certification (one document) were admitted into evidence (Plaintiff's Exhibit # 4). On the right hand margin of this exhibit are smaller versions of the three other photographs admitted into evidence. The smaller version of photo # 2, however, shows at the left margin the vehicle seen in photo # 1 coming the opposite direction on Pennsylvania Avenue from the Minella vehicle. As a result, this smaller photo depicts somewhat better the motion of the Minella vehicle. The other vehicle does not show up in the 8 × 10 blow up (Exhibit # 2); only its shadow does.

Minella cross-examined Parker, primarily on the issue of the calibration of the camera and the red light. She did not testify, offer any witnesses, exhibits or affidavits.

At the conclusion of the trial, the trial court in two separate parts of its opinion ruled that the testimony of Parker, the photographs, and the violation/certification had established a prima facie case. The court went on to say:

> To me, what this case hinges on is the concept of the certificate constitution prima facie evidence. And what I always like to do when I have a term like that, is go to a law dictionary, Black's Law Dictionary. And I quote, "Prima facie evidence. Evidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." And there's footnote under that. "The legislative branch ..."—or case there, there's a case, sorry, an article, an article noted. Quoting from that article, Wigmore on evidence, "the legislative branch may create an evidential presumption, or a rule of 'prima facie' evidence, i.e., a rule which does not shut out evidence, but merely declares that certain conduct shall suffice as evidence until the opponent produces contrary evidence."

> Now, that seems to say that once you've produced that evidence, you've made your case, until the opponent produces contrary evidence. Now, the opponent didn't produce any evidence. So, what can this Court conclude from that? Did the defendant produce any contrary evidence, so, or contradictory evi, contrary evidence? [1]

Later the trial court held that Minella's cross examination was enough to raise a contrary question of whether the camera was operating properly on the day her vehicle was photographed going through a red light.

The trial court's concern seemed to be there was no camera calibration log introduced into evidence. That conclusion arises from its reference to the introduction into evidence of such a log in another unrelated red light camera case. The transcript of the court's ruling covers more than a page of a recital about such a log and the contents from that earlier case.

In the end, the trial court held that once the prima facie case was questioned, that was sufficient to overcome the statutory presumption and the City's prima facie case no longer existed.

### Procedural History

The procedural history of this case is undisputed. Minella received a civil assessment in the amount of $75 imposed by 1 *Wilm.C.* § 37–95(b)(1) as authorized by the Delaware enabling statute 21 *Del.C.* § 4101(d)(2). The civil assessment was imposed for Minella's failure to stop at a red light at the intersection of Pennsylva-

---

1. Hearing Transcript pp. 64–65.

nia and Woodlawn Avenues. Minella filed an action in Justice of the Peace Court for nullification of that civil assessment. Trial was held on March 12, 2004, in Justice of the Peace Court 13. The Court found Minella liable for the civil assessment in its decision dated March 12, 2004.

Minella appealed to the Court of Common Pleas on March 24, 2004. Judgment was entered in Minella's favor. The City then appealed to the Superior Court.

### Standard of Review

Appeals of civil cases from the Court of Common Pleas to the Superior Court are on the record and not *de novo*.[2] In such appeals, this Court is limited to correcting errors of law and determining whether substantial evidence exists to support factual findings.[3] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[4] It is not the duty of this Court, on appeal, to weigh the evidence, determine questions of credibility or make its own factual findings.[5] When the determination of facts rests on a question of credibility and acceptance or rejection by the trial judge of live testimony, the trial judge's findings will be approved on review.[6] Factual findings will not be overturned on appeal, if they are sufficiently supported by the record and are the product of an orderly and logical deductive process.[7] Questions of law, however, are reviewed *de novo*.[8]

### Discussion

The Motor Vehicle Code requires a vehicle facing a red signal to stop before crossing the stop limit, which can be a line in the roadway or a sign, or before entering a cross walk on the nearest side, etc.[9] When a driver sees a full yellow light, he or she is on notice that the next signal will be a red light displayed "immediately thereafter." [10]

To curtail the number of drivers disregarding red lights and to reduce traffic accidents, injuries and deaths, the General Assembly enacted legislation authorizing the State or any local government to create a program for the installation of cameras at intersections and to impose a civil penalty for the owner of vehicles photographed going through red lights.[11]

The City followed up on this enabling legislation and installed at various intersections traffic light signal violation monitoring systems approved by the Delaware Department of Transportation.[12] A traffic light signal violation monitoring system is a system that is a "vehicule sensor installed to work in conjunction with a traffic light that automatically produces 2 or more photographs ... of each vehicle at the time it is used or operated in violation

2. Superior Court Civil Rule 72(g).

3. *Shahan v. Landing*, 643 A.2d 1357, 1359 (Del.1994).

4. *Oceanport Ind. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del.1994).

5. *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del.1965).

6. *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).

7. *Ensminger v. Merritt Marine Construction, Inc.*, 597 A.2d 854, 855 (Del.Super.1988).

8. *Wilson v. Sico*, 713 A.2d 923, 924 (Del. 1998).

9. 21 *Del. C.* § 4108(a)(3)

10. 21 *Del. C.* § 4108(a)(2).

11. 21 *Del. C.* § 4101(d).

12. *21 Del. C.* § 4101(d)(1).

of this subsection."[13] The owner of a vehicle which goes through a red light, is liable for a civil or administrative fee not to exceed $75.[14] The owner, whether resident or non-resident, is to be sent a summons which will include, among other things, copies of at least two photographs showing the violation.[15] That summons is to also provide notice of the owner's ability to rebut the presumption that he or she is the operator of the vehicle at the time of the alleged violation and the means of rebutting such presumption.[16]

A person receiving this summons has the right to contest it and have a hearing.[17] The hearing is civil. The statute sets out the elements necessary for the governmental entity to prove the violation at any such hearing:

> Proof of violation. Proof of a violation of this subsection shall be evidenced by information obtained from a traffic light signal violation monitoring system authorized pursuant to this subsection. A certificate, or facsimile thereof, based upon inspection of photographs, microphotographs, videotape or other recorded images produced by a traffic light signal violation monitoring system shall constitute prima facie evidence of the facts contained therein, if the certificate, or facsimile thereof, is sworn to or affirmed by a technician employed by a locality authorized to impose assessments pursuant to this subsection, or by an employee of an entity designated by such locality to administer records under this subsection. Any photographs, microphotographs, videotape, or other recorded images evidencing such a violation shall be available for inspection in

any proceeding to adjudicate the liability for such violation pursuant to regulation, ordinance or other law adopted pursuant to this subsection.[18]

The statute creating this camera enforcement program creates a presumption that the owner is the violator, but it also provides the means to rebut the presumption:

> Presumptions. The owner of any vehicle found to be in violation of this subsection shall be held prima facie responsible for such violation in the same manner as provided for under § 7003 of this title, unless the owner can furnish evidence that the vehicle was, at the time of the violation, in the care, custody or control of another person. Such presumption shall be rebutted if the owner:
>
> a. Furnishes an affidavit by regular mail to the entity indicated on the summons that he or she was not the operator of the vehicle a the time of the alleged violation and provides the name and address of the person or company who leased, rented, or otherwise had the care, custody or control of the vehicle, or attaches a certified copy of a police report showing that the vehicle or license plate(s) thereof had been reported to the police as stolen prior to the time of the alleged violation of this subsection; or
>
> b. Provides proof in court that he or she was the operator of the vehicle at the time of the alleged violation or that he or she failed to comply with the traffic signal either in order to yield the

---

13. *21 Del. C.* § 4101(d)(3)b.

14. *21 Del. C.* § 4101(d)(2).

15. *21 Del. C.* § 4104(d)(4).

16. *Id.*

17. *21 Del. C.* § 4101(d)(6).

18. *21 Del. C.* § 4101(d)(8).

right-of-way to an emergency vehicle or as part of a funeral procession.[19]

The reference to 21 *Del. C.* § 7003 is to a section concerning vehicles illegally parked in fire lanes and making the owner the presumptive violator if the vehicle is unattended and the operator cannot be located.

As noted, Minella exercised her right to contest the alleged violation first by going to trial in Justice of the Peace Court and then to the Court of Common Pleas.

The evidence against Minella is undisputed. She did not deny going through the light. The photographs clearly demonstrate that even before she reached the stop line for the intersection the light was red. It was still red when she was in the middle of the intersection.[20] The evidence also demonstrated the yellow signal was on for four seconds before the red signal came on.

The City's evidence also included the certification as specified by 21 *Del. C.* § 4101(d)(8). Parker was the technician employed by ACS which has the contract with the City for the red light camera program. He provided the requisite sworn testimony and the certification was admitted into evidence without objection. The City, therefore, made out the statutory prima facie case elements and the trial court so found. There was substantial evidence to support the court's factual findings and Minella does not dispute that legal finding.

Minella, however, produced no evidence addressing the express statutory eviden-

tiary means for rebutting the presumption. Nor, as noted, did she provide *any* kind of evidence except Parker's answers to her questions about calibration. She also does not dispute that her car was in the middle of the intersection of Pennsylvania and Woodlawn Avenues when the light was red and that it was red before she entered the intersection. She, therefore, had a duty to stop but did not.

Her argument is one of law and it is that the Delaware courts follow the Thayer–Wigmore view on the effect of a statutory presumption in that the presumption merely shifts the burden of going forward with evidence.[21] That view is that a presumption shifts the burden of *going* forward with the evidence "until the adversary has gone forward with his evidence."[22] The question before the Court is whether Minella satisfied the burden placed on her to rebut and overcome statutory the presumption in favor of the City.

Ruling from the bench, the trial court found that the City had established a *prima facie* case, in short, it had met all the requirements to establish the statutory presumption in its favor.[23] The trial court quoted (without exact attribution) Wigmore on Evidence: "the legislative branch may create an evidential presumption, or a rule of 'prima facie' evidence, i.e., a rule which does not shut out evidence, but merely declares that certain conduct shall suffice as evidence until the opponent produces contrary evidence."[24] It added that, once evidence was produced, the case was

---

**19.** *21 Del. C.* § 4101(d)(9).

**20.** It is difficult to see how her cross-examination on calibration could refute, let alone rebut, this evidence. While that is not the issue on appeal, it manifests the error of ruling the presumption had been rebutted by her questioning.

**21.** Answering brief at 6.

**22.** *Bennett v. Andree,* 264 A.2d 353, 355, n. 2, quoting Thayer, Preliminary Treatise on Evidence, Appx. B, pp. 575–576.

**23.** Hearing Transcript at 67.

**24.** Citation unavailable.

made unless the opponent produced contrary evidence.[25] The court continued, however, by saying that Minella did not have to produce evidence; all she had to do was to assert the contrary or deny the truth of the presumption in order to shift the burden.[26] The court maintained that, "once the evidence presented is questioned, you don't have to produce evidence, you simply have to question it." Thus, the court found that Minella's questioning the calibration of the camera was sufficient to shift the burden of persuasion to the City and Minella did not have to produce rebuttal evidence.[27]

This ruling is an error of law for three reasons. First, by statute, the legislature created a presumption, which, if the governmental entity satisfies the elements of the presumption, creates a prima facie case and the trial court so found. Such proof, of course, is by evidence. But the legislature also specified the *evidentiary* means by which the owner can rebut the presumption of being the violator. One is to show by affidavit that he or she was not the operator of the vehicle photographed. The other is that to show by "proof" that he or she failed to stop because of an emergency vehicle or being in a funeral procession.

Minella did neither as well as not producing any relevant evidence. She never disputed that she was the operator or that she went through the red light. She did not present any evidence she was compelled to go through the red light because of an emergency vehicle or because she was in a funeral procession.

The trial court, therefore, judicially established a non-statutory means of rebuttal by equating questions about calibration to overcome a statutory presumption. Such a ruling contains its own errors. One, there was no *relevant evidence* of any kind which Minella produced and that cannot be a basis for overcoming the statutory presumption. Two, her questions did not address either of the two explicit means statutorily prescribed to overcome the statutory presumption in favor of the City and they did not even rise to the level of evidence. Nor is the subject of her cross-examination statutorily recognized as a means of rebutting the presumption in favor of the City.

The legislature, as noted, provided two clear ways for an alleged violator to overcome the prima facie case. If, in this instance, the legislature meant to provide that the presumption could be rebutted by producing evidence that the camera and the light were not calibrated, it could have done so.[28] Further, if it wanted to add the requirement of proving calibration to the elements needed to satisfy the presumption/prima facie case, it could have done so.[29] The legislature did neither. The purpose of the courts is to give effect to the literal meaning of an unambiguous statute, such as the one in this case.[30]

A further error was that the trial court referred to evidence, a calibration log, from another and unrelated red light camera case. The court reviewed that evidence in some detail in its ruling against the City in this case. It appears, based on Minella's cross-examination of the City's

25. Hearing Transcript at 65.

26. Hearing Transcript at 66.

27. Hearing Transcript at 69.

28. *State v. Haskins,* 525 A.2d 573, 576 (Del.Super.1987).

29. *duPont v. duPont,* 87 A.2d 394, 399 (Del. 1952).

30. *Coastal Barge Corp. v. Coastal Zone Ind. Cnotrol Bd.,* 492 A.2d 1242 (Del.1985).

663

witness in the instant case, the court may have had a pre-disposition to not accept the statutorily created presumption. Such a suspicion is reinforced by the court's detailed recollection of that evidence from the unrelated case.

The statute does not require the City or governmental entity using this camera system and relying upon the presumption to provide such a calibration log in these civil proceedings.

Third, the ruling was also erroneous because Minella's alleged "contrary evidence" was not contrary to the elements of the prima facie case the City established.

While not applicable to this situation, DRE 301(a) and decisions interpreting it provide guidance and support to this Court's decision. The rule is inapplicable to this case since there is statutory presumption. That rule of evidence states:

> Presumptions in general in civil actions and proceedings.
>
> (a) *Effect.* In all civil actions and proceedings not otherwise provided for by statute or by these Rules, a presumption imposed on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.[31]

DRE 301 is not the same as FRE 301. Delaware's version "specifically rejects the 'bursting bubble' rule [the federal rule/interpretation] which requires only that the opposing party *produce* some evidence to rebut the presumption." (emphasis in original)[32] In short, under the rule, Minella would have been (1) required to produce relevant evidence, which her cross examination did not and (2) evidence which

meets the burden of proof which had shifted to her. She did neither.

By law, the evidence which she must produce is specified: an affidavit that she was not the operator or that an emergency vehicle or being in a funeral possession put her in a position of having to go through a red light. She did neither. Therefore, if DRE 301(a) were applicable, Minella would have failed in meeting her burden of proof.

By finding the City had met its prima facie case, hence the requirements of the statutory presumption had been met, but that Minella had overcome it without producing the expressly prescribed rebuttal evidence, the trial court erred as a matter of law.

### *Conclusion*

For the reasons stated herein, the decision of the Court of Common Pleas is **REVERSED** and **REMANDED.** The matter is **REMANDED** to reinstate the judgment against Minella of the Justice of the Peace Court.

**IT IS SO ORDERED.**

---

31.  Delaware Rules of Evidence 301.

32.  *Staats v. Lawrence*, Del.Supr., No. 71, 1990, 582 A.2d 936, Moore, J. (1990) (OR-DER); *see also, Bennett v. Andree,* 264 A.2d 353 (Del.Super.1970).