STATE of Minnesota, Appellant

v.

Daniel Alan KUHLMAN, Respondent.

No. A06–568.

Court of Appeals of Minnesota.

Sept. 22, 2006.

Mike Hatch, Attorney General, St. Paul, MN; and Jay M. Heffern, Minneapolis City Attorney, Mary Ellen Heng, Assistant City Attorney, Minneapolis, MN, for appellant.

Howard Bass, Bass Law Firm, P.L.L.C., Burnsville, MN, for respondent.

Faison T. Sessoms Jr., Minneapolis, MN, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

Considered and decided by LANSING, Presiding Judge; RANDALL, Judge; and WILLIS, Judge.

## OPINION

LANSING, Judge.

In August 2005, a Minneapolis traffic camera recorded a vehicle failing to stop at a red light. Daniel Kuhlman, the respondent, owned the vehicle and was issued a citation under the city's photo-enforcement ordinance. The district court granted Kuhlman's motion to dismiss and the city appeals. The city also moves to strike information in the appendix of the amicus brief. We deny the motion to strike and affirm the district court's decision.

## FACTS

In September 2004, the Minneapolis City Council enacted sections 474.620 to 474.670 of the Minneapolis Code of Ordinances, providing for the automated enforcement of traffic signals at certain city intersections, through the use of cameras that capture images of vehicles violating traffic signals. Minneapolis, Minn., Code of Ordinances §§ 474.620–.670 (2004). The Minneapolis photo-enforcement system provides for the use of a camera, installed at the intersection, to produce photographic, video, or digital images of the back of the vehicle to obtain its registration-plate number. If the recorded image detects a violation of a traffic-control signal, a peace officer may issue a citation to the owner or lessee of the vehicle through the United States mail. The ordinance definition of what constitutes a traffic-signal violation is nearly identical to the definition in Minn. Stat. § 169.06, subd. 5 (Supp.2005).

In section 474.660, entitled "Evidence," the Minneapolis ordinance provides that the recorded image, together with proof of the vehicle's ownership or leased status, constitutes a rebuttable presumption that the owner or lessee was the person who committed the violation. The presumption may be rebutted by a sworn affidavit of

non-ownership accompanied by the name and current address of the person operating the vehicle at the time of the violation or a copy of a police report showing the vehicle had been reported stolen before the violation. The "Evidence" section also provides that if the city finds that the person named in the citation was not operating the vehicle at the time of the violation, the city shall issue a citation through the United States mail to the person the affidavit identifies as the driver.

In August 2005, a camera at the intersection of West Broadway Avenue and Lyndale Avenue North in Minneapolis captured the image of a vehicle failing to stop at a red light. The vehicle was owned by Daniel Alan Kuhlman. The Minneapolis police department cited Kuhlman for failing to stop at a red light at an intersection, in violation of section 474.640. Kuhlman pleaded not guilty and subsequently moved to dismiss the charge, arguing that Minneapolis's "automated traffic law enforcement system ordinances are invalid because they conflict with state law, and are unconstitutional because they violate the due process rights of registered owners of motor vehicles."

The district court granted Kuhlman's motion to dismiss, concluding that the Minneapolis photo-enforcement ordinance is preempted by state laws regulating traffic. The district court found that the Minneapolis ordinance covers the same subject as the state traffic-signal statute, but the ordinance provides a lesser standard of due process protection to vehicle owners because the rebuttable presumption denies them the presumption of innocence: "[T]he owner is presumed to be the driver and must prove that someone else was driving in order to avoid a conviction." The district court also noted that, because the Hennepin County District Court must certify a record of the ordinance conviction

to the Minnesota Department of Public Safety, the conviction will appear on the owner's driving record and provide a basis for the enhancement of future driving violations. Minn. Stat §§ 169.95(b), 171.16, subd. 1 (2004). These convictions can trigger a driver's-license suspension under Minn. R. § 7409.2200 (2005). The city appeals from this determination.

## ISSUES

I.  Should this court grant the city's motion to strike the portions of the amicus brief that are not part of the district court record?

II. Does the Minnesota Highway Traffic Regulation Act preempt Minneapolis's photo-enforcement ordinance?

## ANALYSIS

### I

As a preliminary matter, the city has moved to strike two sections of the amicus brief appendix submitted by the Minnesota Association of Criminal Defense Lawyers. The city argues that the challenged portions are not part of the district court record. An amicus brief, however, may provide articles and information that are in the public domain and may have escaped a reviewing court's attention. *Camacho v. Todd & Leiser Homes*, 706 N.W.2d 49, 52 n. 3 (Minn.2005). Because the challenged sections of the appendix to the amicus brief are articles in the public domain, we deny the motion to strike.

### II

This case is essentially a controversy over the division of power between individual cities and the state. This division of powers is governed by the preemption doctrine, which developed by analogy to federal Supremacy Clause cases. *See Mangold Midwest Co. v. Village of Richfield*, 274

Minn. 347, 356, 143 N.W.2d 813, 819 (1966). The question of whether a state statute preempts a city ordinance is a question of law, which we review de novo. *Haumant v. Griffin,* 699 N.W.2d 774, 777 (Minn.App. 2005), *review denied* (Minn. Aug. 24, 2005).

State statutes may preempt a local ordinance in three ways: (1) express preemption, when the state statute explicitly defines the extent to which its enactments preempt local regulation; (2) field preemption, when a city ordinance attempts to regulate conduct in a field that the state legislature intended the state law to exclusively occupy; and (3) conflict preemption, when a city ordinance permits what a state statute forbids or forbids what a statute permits. *See English v. General Elec. Co.,* 496 U.S. 72, 78–80, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990) (discussing federal preemption doctrines); *Mangold,* 274 Minn. at 352, 356–57, 143 N.W.2d at 816, 819–820 (discussing state field and conflict preemption doctrines).

In this case, there is no question that Minneapolis has some power to enact traffic regulations. Minneapolis is a home-rule-charter city and its charter contains a general-welfare clause. Minneapolis, Minn., City Charter ch. 1, § 2 (2004). Regulation of traffic falls under this clause. *State v. Sugarman,* 126 Minn. 477, 479, 148 N.W. 466, 466–67 (1914). As a home-rule city, Minneapolis is expressly authorized to regulate parking, use traffic-control signals, regulate processions, designate one-way streets, identify through highways, and regulate certain uses of trucks. In addition, the Minnesota Highway Traffic Regulation Act permits cities to enact traffic ordinances that are not "in conflict" with the Act, so long as the penalty is the same as the penalty for the state offense. Minn.Stat. § 169.022 (2004).

The controversy centers, instead, on the degree to which Minneapolis's power is preempted or limited by the Minnesota Highway Traffic Regulation Act. Under Minnesota law, the Act's provisions "shall be applicable and uniform throughout this state . . . and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein." Minn.Stat. § 169.022.

This statutory language expressly preempts local traffic regulations that are "in conflict" with the Minnesota Highway Traffic Regulation Act. In *City of St. Paul v. Olson,* the supreme court noted that the legislature "did not intend to preempt the field of highway traffic regulation entirely." 300 Minn. 455, 456, 220 N.W.2d 484, 485 (1974). Nonetheless, the language of section 169.022 substantially limits a city's power to enact traffic regulations. The Act restricts a city's power to enact traffic ordinances to "the limited local regulation the statute expressly permitted." *Mangold,* 274 Minn. at 359, 143 N.W.2d at 821 (discussing *State v. Hoben,* 256 Minn. 436, 98 N.W.2d 813 (Minn. 1959)). The extent of express preemption is a question of statutory interpretation. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). Within this framework we address whether Minneapolis's photo-enforcement ordinance is "in conflict" under section 169.022.

In interpreting the phrase "in conflict," we first look to the text of the Minnesota Highway Traffic Regulation Act. Section 169.04 expressly authorizes a city to regulate "traffic by means of police officers or traffic-control signals." Minn.Stat. § 169.04(a)(2) (2004). But the terms "police officer" and "traffic control signal" are narrowly defined. Minn.Stat. § 169.01, subds. 27, 42 (2004). A "traffic control signal" is only a device "by which traffic is alternately directed to stop and permitted

to proceed." *Id.*, subd. 42. The language in this definition does not cover photo-enforcement, and we conclude that photo-enforcement is not expressly authorized. Instead our analysis is guided by two long-standing interpretations of section 169.022.

■ First, a local traffic ordinance is "in conflict" if the ordinance interferes with statewide uniformity by prohibiting conduct that is not prohibited in the rest of the state. In *Duffy v. Martin*, 265 Minn. 248, 255, 121 N.W.2d 343, 348 (1963), the supreme court held that a Minneapolis ordinance was "in conflict" within the meaning of the Minnesota Highway Traffic Regulation Act because the ordinance added a requirement that drivers use a turn signal before entering traffic. The supreme court reasoned that the purpose of the Act's uniformity requirement is to enable a driver "to proceed in all parts of the state without the risk of violating an ordinance with which he is not familiar." *Id.*

The city argues that we should apply the definition of "conflict" found in *Mangold.* Under *Mangold,* an ordinance does not conflict with a statute when "the ordinance, though different, is merely additional and complementary to or in aid and furtherance of the statute." 274 Minn. at 352, 143 N.W.2d at 817. But *Mangold* involved a question that arose under the general conflict-preemption doctrine, not under an express preemption provision. In fact, *Mangold* specifically distinguished cases arising under the Minnesota Highway Traffic Regulation Act, noting the Act's emphasis on uniformity and statewide application. 274 Minn. at 359, 143 N.W.2d at 821.

■ Second, a local ordinance is "in conflict" with the Minnesota Highway Traffic Regulation Act if the ordinance permits significantly different procedures to be used to prosecute the same conduct. *Hoben,* 256 Minn. at 444, 98 N.W.2d at 818.

In *Hoben,* the court concluded that an Edina DUI ordinance conflicted with the state DUI statute because a defendant would be denied the right to a jury trial in the municipal court. *Id.* at 444, 98 N.W.2d at 819. The supreme court reasoned that:

> It would be a strange anomaly for the legislature to define a crime, specify punishment therefor, provide that its application shall be uniform throughout the state, and then permit a municipality to prosecute that crime as a civil offense. Basic civil rights of the defendant would then depend upon the arbitrary choice of the prosecutive authorities as to the court in which action against him would be instituted.

*Id.*, 98 N.W.2d at 818–19. The court held that, under a predecessor to section 169.022, the regulation of traffic offenses must be uniform "both as to penalties and procedures." *Id.* at 444, 98 N.W.2d at 818. Because the traffic act's provisions are applicable and uniform throughout the state, and local ordinances must have identical penalties, "the legislature intended that the procedures used in the prosecution of such ordinances must likewise be uniform throughout the state...." *State ex rel. Sheahan v. Mulally,* 257 Minn. 27, 29, 99 N.W.2d 892, 893–94 (1959).

The city argues that *Hoben* simply requires the city to use the state rules of criminal procedure when prosecuting traffic offenses. While *Hoben* does require the city to use the state criminal-procedure rules, the language in *Hoben* is focused on uniformity, not due process or the rules of criminal procedure. Furthermore, subsequent cases have consistently explained that the *Hoben* decision was based on uniformity and preemption principles. In *Mangold,* the supreme court noted that in *Hoben* "the provision requiring uniformity and statewide application clearly showed the legislative intent to preempt this field

except for the limited local regulation the statute expressly permitted." 274 Minn. at 359, 143 N.W.2d at 821. In *Sheahan*, the court noted, "At the risk of repetition we may observe that we held in the *Hoben* case that under the provisions of [the Minnesota Highway Traffic Regulation Act] prosecutions of traffic violations are to have uniform treatment throughout the state...." 257 Minn. at 30, 99 N.W.2d at 894. Similarly, in *State v. Paulick*, the supreme court observed that *Hoben* "held that traffic violations were a matter of statewide concern and must be dealt with in a uniform manner." 277 Minn. 140, 145, 151 N.W.2d 591, 595 (1967). Each of these cases emphasizes the need for uniformity. There is no indication that this uniformity should be limited to application of the rules of criminal procedure. We therefore reject the city's narrow interpretation of *Hoben*.

■ We now turn to the application of these standards to Minneapolis's photo-enforcement ordinance. We conclude that the ordinance is "in conflict" with section 169.022 for two reasons. First, accepting for purposes of analysis the city's argument that the ordinance only creates liability for vehicle owners, an owner-liability ordinance would prevent uniform traffic regulation and would therefore conflict with the Minnesota Highway Traffic Regulation Act. Like the *Duffy* ordinance, Minneapolis's regulation would hinder intrastate travel by creating the risk of unexpected liability. We recognize that the Minnesota state legislature has, in two circumstances, made owners liable for the conduct of drivers. *See* Minn.Stat. §§ 169.20, subd. 5b (owners liable for failure to yield to emergency vehicles), .444, subd. 6 (owners liable for violations of school-bus-safety law) (2004); *see also State v. Eakins*, 720 N.W.2d 597 (Minn. App.2006) (rejecting due process challenge

to § 169.444). But it is the Minneapolis City Council, not the Minnesota legislature, that has created the owner liability under the photo-enforcement ordinance. Minnesota law does not permit individual cities to unilaterally regulate traffic in a way that would create a checkerboard of liability across the state.

Second, the city's characterization of the photo-enforcement ordinance as an owner-liability ordinance misrepresents its actual operation. As written, the photo-enforcement ordinance is fundamentally an alternative method of apprehending and prosecuting *drivers* who do not obey Minneapolis traffic signals. Ordinance section 474.640 is a circular enactment that functionally rewrites the state traffic-signal law under the guise of an owner-liability ordinance. "It is impossible to avoid the conclusion that the city has attempted to do by indirect means ... what it could not do directly." *State v. Elofson*, 86 Minn. 103, 107–08, 90 N.W. 309, 311 (1902) (addressing conflicting exercise of power between the state and local units of government). Ordinance section 474.640, which creates owner liability, was enacted in tandem with section 474.660, which states:

(a) In the prosecution of a violation, as set forth by section 474.640, captured by an automated traffic law enforcement system, prima facie evidence that the vehicle described in the citation was operated in violation of this section, together with proof that the defendant was at the time of such violation the owner or lessee of the vehicle, shall constitute in evidence a rebuttable presumption that such owner or lessee was the person who committed the violation. The presumption shall be rebutted if the owner or lessee:

(1) Provides a sworn affidavit delivered by United States mail to the city

or agency that he or she was not the owner or lessee of the vehicle at the time of the alleged violation and provides the name and current address of the person operating the motor vehicle at the time of the violation; or (2) Submits a copy of a police report showing the vehicle had been reported as stolen in a timely manner before the date of the violation.

(b) If the city or agency finds that the person named in the citation was not operating the vehicle at the time of the violation or receives evidence under paragraph (a)(1) of this section identifying the person driving the vehicle at the time of the violation, the city or agency shall issue a citation to the identified driver through the United States mail, no later than fourteen (14) days after receipt of this information.

Minneapolis, Minn., Code of Ordinances § 474.660.

The exact meaning of the ordinance is far from clear. The meaning of section 474.660(a)(1) is particularly elusive. As the district court noted, "This provision makes little sense." In the district court, the city argued that section 474.660 creates an affirmative defense for owners. On appeal, the city has argued that section 474.660 is an administrative directive requiring the city officials to dismiss the citation if the owner shows he was not the driver. In addition, section 474.660(b) might be literally interpreted as expanding liability to drivers rather than exculpating vehicle owners. But this interpretation has not been advanced by the city, and, in the district court, the city submitted an affidavit indicating its policy was to dismiss citations against the *owner* if a citation is issued against the *driver.* The district court concluded that section 474.660 creates a rebuttable presumption that the owner was the driver. We agree

with the district court's procedural conclusion. But the substantive effect is equally important: as long as the owner can show that he was not the driver, the owner will not be punished, and the *driver* will receive a citation. *See* Minneapolis, Minn., Code of Ordinances § 474.660(b). Minneapolis's photo-enforcement ordinance therefore creates a circular but parallel system for enforcing traffic-signal violations against *drivers.*

The effect of the photo-enforcement ordinance is to regulate the same conduct as the Minnesota Highway Traffic Regulation Act. *See* Minn.Stat. § 169.06, subd. 4(a) (2004) (requiring drivers to obey traffic signals). But the Minneapolis ordinance and the state statute have conflicting burdens of proof. Under the state statute, an element of the crime is that the defendant was the driver. Under ordinance section 474.660, in contrast, the defendant must establish that he was not the driver and that someone else was. This type of procedural conflict is inconsistent with the uniformity requirement of the Minnesota Highway Traffic Regulation Act. *Hoben,* 256 Minn. at 444, 98 N.W.2d at 818. It would be a "strange anomaly" for the legislature to define a crime, specify a punishment, provide that its application shall be uniform throughout the state, and then permit a city to change the elements of the offense. *Hoben,* 256 Minn. at 444, 98 N.W.2d at 819.

Finally, we reject the city's argument that ordinance section 474.660 can be severed from the rest of the photo-enforcement ordinance. Because severing section 474.660 would expand and alter the class of persons liable under the photo-enforcement ordinance, we cannot presume the city council would have enacted the remaining provisions without section 474.660. Therefore, we cannot sever the ordinance.

*See* Minn.Stat. § 645.20 (2004) (discussing severance of statutes).

This interpretation of "in conflict" recognizes the significant limitations on a city's power to enact traffic regulations. But the city's power to enact ordinances that cover the same conduct as the Minnesota Highway Traffic Regulation Act is not superfluous. By allowing cities to regulate the same conduct, the state obtains the advantage of concurrent enforcement by cities. *See Hoben*, 256 Minn. at 443, 98 N.W.2d at 818. More importantly, cities do retain significant power to regulate traffic. At a minimum, an ordinance is not "in conflict" if it covers specifically what the traffic act covers generally. *Olson*, 300 Minn. at 457, 220 N.W.2d at 485. In addition, section 169.022 does not preempt local regulation if it is expressly authorized. Cities can still enact traffic regulations that fall into one of the six categories expressly authorized in section 169.04. This interpretation of the Minnesota Highway Traffic Regulation Act maintains the appropriate balance between the need for statewide uniformity and local control.

For these reasons, we conclude that the Minneapolis photo-enforcement ordinance is invalid. It is, however, important to emphasize that our decision does not determine the general validity or invalidity of photo-enforcement of traffic violations. We are presented solely with the question of whether the Minneapolis photo-enforcement ordinance conflicts with the preemption provisions in Minn.Stat. § 169.022. As the district court noted, the automated-traffic-enforcement systems that have been upheld against legal challenges by vehicle owners are cases in which the state, rather than a local unit of government, enacted the vehicle-owner-liability legislation. *See City of Wilmington v. Minella*, 879 A.2d 656 (Del.Super.Ct.2005) (Wilmington, Del.); *Shavitz v. City of High Point*, 270 F.Supp.2d 702 (D.N.C. 2003); *vacated on other grounds sub nom. Shavitz v. Guilford County Bd. of Educ.*, 100 Fed. App'x 146 (4th Cir.2004) (High Point, N.C.); *State v. Dahl*, 336 Or. 481, 87 P.3d 650 (2004) (Portland, Or.); *see also Agomo v. Williams*, 2003 WL 21949593 (D.C.Super.2003) (Washington, D.C.). *But cf. State ex rel. Scott v. Cleveland*, 166 Ohio App.3d 293, 850 N.E.2d 747 (2006) (denying writ of prohibition because no controlling authority established that Cleveland is "patently and unambiguously without jurisdiction" to use automated-speeding-enforcement system). Several attempts have been made to pass enabling legislation for automated-traffic-law-enforcement systems in Minnesota, but none of the proposed legislation has been enacted into law. *See* S.F. 1017 (2001); H.F. 508 (2003); H.F. 650 (2003); S.F. 439 (2003); S.F. 608 (2003).

Because the Minneapolis ordinance is in conflict with the Minnesota Highway Traffic Regulation Act, we affirm the district court's dismissal of the charge against Kuhlman. We, therefore, do not reach Kuhlman's due process arguments. *See State v. Hoyt*, 304 N.W.2d 884, 888 (Minn. 1981) (providing that courts do not decide constitutional questions except when necessary to dispose of case).

## DECISION

Under Minnesota law, the Minneapolis photo-enforcement ordinance conflicts with the Minnesota Highway Traffic Regulation Act. Because the photo-enforcement ordinance is inconsistent with the Act's uniformity requirement and changes the burden of proof provided by Minn.Stat. § 169.06, subd. 4 (2004), the Minneapolis ordinance is invalid under Minn.Stat. § 169.022 (2004).

**Affirmed; motion denied.**

WILLIS, Judge (concurring specially).

I concur in the opinion, but I write specially to underscore what I perceive to be a major flaw in section 474.660(a)(1) of the Minneapolis ordinance at issue. That subdivision provides the first of two methods by which the owner or lessee of a motor vehicle may rebut the presumption that he or she was the driver of the vehicle when it ran a red light.

Section 474.660(a)(1) provides that the presumption can be rebutted if the owner or lessee "[p]rovides a sworn affidavit by United States mail to the city or agency that he or she was not the owner or lessee of the vehicle at the time of the alleged violation and provides the name and current address of the person operating the motor vehicle at the time of the violation." As our opinion notes, "[t]he meaning of section 474.660(a)(1) is particularly elusive," and we also note the district court's comment that "[t]his provision makes little sense." The city argued before this court that section 474.660 is an administrative directive requiring the dismissal of a citation if the owner of a vehicle shows that he was not the driver at the time of the violation. But that is not what section 474.660(a)(1) says. The requirement is not the submission of an affidavit that the owner or lessee of the vehicle was not the driver at the time of the violation but rather an affidavit that the owner or lessee was not the *owner or lessee* of the vehicle at the time of the alleged violation *and* submission of the "current address of the person operating the motor vehicle at the time of the violation." This creates an impossible burden. If the affiant was neither the owner nor the lessee of the vehicle at the time of the alleged violation, it is difficult to imagine circumstances in which the affiant would know the identity of the person who was operating the vehicle at the time of the violation. I would go the district court one better: The provision makes no sense.