## JAMES A. DENNEY AND ANOTHER v. CITY OF DULUTH.

202 N. W. 2d 892.

November 24, 1972—No. 43541.

*William P. Dinan,* for appellant.

*Fryberger, Buchanan, Smith, Sanford & Frederick* and *Harold A. Frederick,* for respondents.

ROGOSHESKE, JUSTICE.

Defendant, city of Duluth, appeals from a judgment of the district court enjoining its building inspector from issuing a

permit authorizing the construction of multiple dwellings upon the property which is the subject of Ordinance No. 7787, a recently passed amendment to Duluth's comprehensive zoning ordinance,[1] until such amending ordinance is approved by the voters of the city of Duluth pursuant to § 52 of its Home Rule Charter.[2] The dispositive issue presented is whether the city council of Duluth acted in its legislative or its administrative capacity when it adopted Ordinance No. 7787. We hold that amending the boundaries of a particular zone of a comprehensive zoning ordinance is a legislative action, and accordingly we affirm the judgment of the district court.

The facts, submitted by stipulation, may be summarized. Capitol City Holding Company, Inc. (hereinafter Capitol City) is a

---

[1] Ordinance No. 7787, entitled "AN ORDINANCE TO AMEND CHAPTER 50 OF THE DULUTH CITY CODE, 1959 ZONING DISTRICT MAPS No. 34 AND No. 35, AS CONTAINED IN THE APPENDIX TO CHAPTER 50, TO PROVIDE FOR THE REZONING OF PROPERTY CONSISTING OF 21.7 ACRES ABUTTING ON AND LYING EASTERLY OF KENWOOD AVENUE, SOUTHERLY OF CHESTER PARK AND NORTHERLY OF PLUM STREET EXTENDED," was adopted by the city council of the city of Duluth on May 11, 1970.

[2] The Home Rule Charter of the City of Duluth, § 52, sets forth the requirements necessary for the holding of a referendum in Duluth and in pertinent part reads: "No ordinance passed by the Council shall go into effect before thirty (30) days from the time of its last publication, except when otherwise required by the general laws of the State or by provisions of this charter.

"If, during said thirty (30) days a petition, signed by qualified electors of the City equal in number to at least ten (10) per cent of the total ballots cast at the last preceding general municipal election protesting against the passage of such ordinance, be presented to the Council, the same shall thereupon be suspended from going into operation; and it shall be the duty of the Council to reconsider such ordinance, and if the same be not entirely repealed, the Council shall submit the ordinance, as provided in Section 51 of this charter, to a vote of the electors of the City, either at the next general municipal election, or at a special election called for that purpose, and such ordinance shall not become operative unless a majority of the qualified electors voting on the same shall vote in favor thereof."

corporation engaged in the business of building and operating apartment houses. Desiring to construct an apartment-house complex consisting of 685 units, Capitol City acquired a 40-acre tract of land located within the city of Duluth in early 1970. The land at that time was zoned for single-family residential dwellings pursuant to the 1958 comprehensive zoning ordinance, now codified as Duluth Legislative Code, c. 50. Section 50-37 of that zoning code permits any owner seeking to redevelop 20 or more acres of land as a "community unit" to deviate from zoning restrictions otherwise applicable, provided the city council approves and certain procedures are followed and specified conditions are satisfied.[3] Among other limitations, § 50-37(c) provides that apartment units must be not less in area than the lot area required for single-family residential purposes. Since Capitol City's 40 acres were within the single-family classification, which required at least 5,000 square feet per family, it was limited in construction by § 50-37(c) to approximately 240 apartment units. Not satisfied with the density permitted, Capitol City petitioned the city council to rezone the middle 21.7 acres of the 40-acre tract to an apartment house zone which would require only 1,500 square feet for each family. If the council granted this rezoning request, which was accompanied by Capitol City's application for approval of a "community unit" development plan, the average density requirement of the entire 40 acres would be reduced to allow a maximum construction of

[3] Duluth Legislative Code, § 50-37, in essence empowers the council by simple resolution to approve such a developer's plan for the construction of a community unit combining homes, apartments, a shopping center, and other allied uses in an area zoned for single-family residences. The plan must be referred to the city planning commission for study, public hearing, and report. Numerous conditions are specified to ensure that the area is adaptable to a "complete community development" and that the plan is consistent with the intent and purpose of the city's comprehensive zoning plan.

697 apartment units. Also, both Minn. St. 462.357, subd. 5,[4] and Duluth Legislative Code, § 50-117,[5] requiring the written consent of two-thirds of the owners of the separate parcels of real estate lying within 100 feet of the 21.7 acres, were satisfied because Capitol City was itself the consenting owner of the 100-foot "buffer" strip around the 21.7 acres, which was all of the property within the 100-foot consent area.[6]

In response to Capitol City's petition, the city council of Duluth adopted Ordinance No. 7787, by virtue of which the 21.7 acres of Capitol City's 40-acre tract was rezoned to an apartment house zone. Simultaneously, the city council, by resolution, approved Capitol City's proposed development plan.

---

[4] Minn. St. 462.357, subd. 5, provides in part: "The provisions of this subdivision apply to cities of the first class. In such cities amendments to a zoning ordinance shall be made in conformance with this section but only after there shall have been filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situate within 100 feet of the real estate affected, and after the affirmative vote in favor thereof by a majority of the members of the governing body of any such city."

[5] Duluth Legislative Code, § 50-117, provides: "Except as otherwise provided by law, amendments to district boundaries shall be made only after there shall be filed in the office of the city clerk a written consent of the owners of two-thirds of the several descriptions of real estate situated within one hundred feet of the real estate affected, and after the affirmative vote in favor thereof by a majority of the city council; provided, that whenever the planning commission shall have made a survey of an area of not less than forty acres and shall have found the number of descriptions of real estate affected by such amendments renders the obtaining of such written consent impractical and shall have affirmed in writing that the proposals are reasonably related to the overall needs of the community to existing land use or to a plan for future land use, the city council, by a two-thirds vote of all its members in favor thereof, may make such amendments without such written consent."

[6] We do not decide whether such a development scheme frustrates the consent requirement of Minn. St. 462.357, subd. 5, or Duluth Legislative Code, § 50-117, since this issue was neither raised nor presented in this proceeding.

Within the 30-day period before Ordinance No. 7787 could become effective under the city's charter, a petition was filed with the city clerk protesting the passage of the ordinance and demanding that it be submitted to a referendum of the voters of Duluth. The city clerk, after examining the petition, found it proper in all respects, but the city council, acting upon the advice of the city attorney, determined not to call for a referendum vote. This action was then brought to enjoin defendant's building inspector from issuing a permit authorizing the construction of multiple-family dwellings within the rezoned 21.7 acres. The trial court concluded that the process of amending Duluth's comprehensive zoning ordinance was subject to the same procedures as amending other ordinances of the city and granted the relief sought.

It is fundamental that a municipality's power to regulate land use by zoning exists by virtue of authority delegated to it by the state. 8 McQuillin, Municipal Corporations (3 ed.) § 25.35. In Alexander v. City of Minneapolis, 267 Minn. 155, 125 N. W. 2d 583 (1963), this court held that the power to amend a comprehensive zoning ordinance must also arise from legislative delegation. As to the defendant city, such delegation is provided by Minn. St. 462.357,[7] which empowers all municipalities to adopt by ordinance comprehensive zoning regulations and thereafter to amend such ordinances. Since § 462.357, subd. 4, does not require that amendment be by ordinance, we are confronted with the narrow question decided by the trial court of whether the amending ordinance is merely an administrative act not subject to the referendum provisions of the city charter.[8]

---

[7] Minn. St. 462.357 supersedes and modifies Minn. St. 1961, § 462.18, under which municipalities formerly derived their legislative authority to regulate, and to amend the regulation of, land use by zoning.

[8] Defendant, for the first time, raises in its appeal to this court the issue of whether Minn. St. 462.351 to 462.364 preempts the field of zoning regulation and thereby invalidates the referendum provisions of the Duluth charter. See footnote 5, *supra*. We have held on numerous

It is the city's contention that use of a referendum is limited to acts of legislation; that amending a comprehensive zoning ordinance is an administrative act; and that, therefore, enactment of Ordinance No. 7787 does not invoke utilization of § 52 of the Duluth Home Rule Charter. To support this assertion, the city relies heavily upon Kelley v. John, 162 Neb. 319, 75 N. W. 2d 713 (1956). In that case, the Supreme Court of Nebraska held (162 Neb. 324, 75 N. W. 2d 716):

"For the reasons herein stated, the ordinance changing the classification of the property here involved from a residence classification to a business classification is administrative in character * * *."

Defendant city further suggests that Minneapolis-Honeywell Regulator Co. v. Nadasdy, 247 Minn. 159, 76 N. W. 2d 670 (1956), is of value to show this court's previous adherence to the rule expressed in the Kelley decision.

The authoritative value of Kelley, however, is highly questionable in view of the later decision in In re Application of Frank, 183 Neb. 722, 164 N. W. 2d 215 (1969). Although the Supreme Court of Nebraska was able to dispose of the issue raised in that case on jurisdictional grounds, it did state the following (183 Neb. 723, 164 N. W. 2d 216):

"* * * A zoning ordinance constitutes the exercise of a governmental and legislative function and a city council adopting a rezoning ordinance which amends a general zoning ordinance acts in a legislative capacity."

To assert, as defendant city does, that the Nadasdy opinion

---

occasions that an unlitigated issue may not be asserted for the first time on appeal, and accordingly we do not attempt to resolve either this preemption issue or the issue attended to in footnote 6 at this time. Radke v. Brenon, 271 Minn. 35, 134 N. W. 2d 887 (1965); Strupp v. Canniff, 276 Minn. 558, 150 N. W. 2d 574 (1967); American Surety Co. of New York v. Greenwald, 223 Minn. 37, 25 N. W. 2d 681 (1946); Allen v. Central Motors, Inc. 204 Minn. 295, 283 N. W. 490 (1939).

reflects this court's previous adherence to the rule expressed in Kelley is to misconstrue Nadasdy. Our determination in Nadasdy dealt solely with the statutory interpretation of Minn. St. 1953, § 462.01, which was repealed by L. 1965, c. 670, § 14. Thus, this court was not confronted there with the issue presented here, namely, whether amendments to comprehensive zoning plans are legislative or administrative in nature.[9]

Where a municipality in the exercise of delegated authority embarks upon a policy of zoning for the purpose of regulating and restricting land use and the construction of buildings within a fixed area, it is exercising legislative power. As this court decided in Kiges v. City of St. Paul, 240 Minn. 522, 530, 62 N. W. 2d 363, 369 (1953):

"Zoning statutes have become common and zoning ordinances which are fair in their requirements are generally sustained as an exercise of the police power * * *. The action of a city council in the zoning field, and the exercise of the police power by the city council, is legislative."

Moreover, Duluth Legislative Code, § 50-114, provides that amendments to the zoning plan can only be accomplished by passage of an ordinance.[10] The trial court correctly determined

---

[9] Defendant city also urges this court to adopt the view stated in Opinion Attorney General, No. 59a-32, Oct. 7, 1968, wherein it was determined that amendments to a zoning ordinance were administrative in nature. This court, however, is only bound to give such opinions "careful consideration," and they are not compelling precedent and do not control. See, Village of Blaine v. Independent School Dist. No. 12, 272 Minn. 343, 353, 138 N. W. 2d 32, 39 (1965); Mattson v. Flynn, 216 Minn. 354, 13 N. W. 2d 11 (1944); County of Hennepin v. County of Houston, 229 Minn. 418, 39 N. W. 2d 858 (1949).

[10] Duluth Legislative Code, § 50-114, sets forth the following: "Whenever justified or required by the public necessity, convenience, general welfare or good zoning practice and after public hearing, report and recommendations of the city planning commission thereon, the city council may, *by ordinance, amend the regulations set forth in this chapter for the districts established on the zoning district map* in accordance with the procedure set forth in this article." (Italics supplied.)

that when the city adopted its comprehensive zoning code, it intended that amendments changing the boundaries of the districts were entitled to the same dignity and protection as the original enactment of the comprehensive plan. In accord with the great weight of authority, a governing body acts in its legislative capacity when it amends the boundaries or the district classifications of a comprehensive zoning plan.[11] Since the city council was under a duty to amend the boundaries of the single-family residential zone by means of an ordinance, and such act is legislative in nature, the amending ordinance is subject to the referendum provisions of the city charter.

Affirmed.

---

[11] Johnston v. City of Claremont, 49 Cal. 2d 826, 323 P. 2d 71 (1958); In re Application of Frank, 183 Neb. 722, 164 N. W. 2d 215 (1969); McQuail v. Shell Oil Co. 40 Del. Ch. 396, 183 A. 2d 572 (1962); D'Angelo v. Knights of Columbus Bldg. Assn. of Bristol, 89 R. I. 76, 151 A. 2d 495 (1959); Anthony v. City of Kewanee, 79 Ill. App. 2d 243, 223 N. E. 2d 738 (1967); Episcopal Foundation of Jefferson County v. Williams, 281 Ala. 363, 202 So. 2d 726 (1967); Stiles v. Town Council, 159 Conn. 212, 268 A. 2d 395 (1970); Lund v. City of Tumwater, 2 Wash. App. 750, 472 P. 2d 550 (1970); Strandberg v. Kansas City, 415 S. W. 2d 737 (Mo. 1967); Smith v. Township of Livingston, 106 N. J. Super. 444, 256 A. 2d 85, affirmed, 54 N. J. 525, 257 A. 2d 698 (1969); Donnelly v. City of Fairview Park, 13 Ohio St. 2d 1, 233 N. E. 2d 500 (1968); 1 Yokley, Zoning Law and Practice (3 ed.) c. 7.