Deborah NORDMARKEN,
et al., Appellants,

v.

CITY OF RICHFIELD, Minnesota,
Respondent.

No. C6–01–1698.

Court of Appeals of Minnesota.

April 2, 2002.

Thomas H. Goodman, Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, for appellants.

James J. Thomson, Mary D. Tietjen, Minneapolis, for respondent.

Susan L. Naughton, League of Minnesota Cities, St. Paul, for amicus curiae League of Minnesota Cities.

Andrew D. Parker, Nancy V. Mate, Minneapolis, for amicus curiae Metropolitan Council.

Considered and decided by
SHUMAKER, Presiding Judge,
HANSON, Judge, and PARKER, Judge.*

## OPINION

GORDON W. SHUMAKER, Judge.

The district court granted partial summary judgment to respondent municipality, ruling that state law preempts the power of referendum contained in the municipality's home rule charter. Appellant voters challenge that ruling as being contrary to law. Because we have deter-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

mined that state law preempts local referendum on the subject at issue in this action, we affirm.

## FACTS

A private developer submitted a plan to the City of Richfield for the development of approximately 40 acres of real estate. The developer's proposal called for a planned unit development consisting of 1.5 million square feet of office space and 7,500 parking stalls. Part of the area to be developed was located in a zone designated for residential and neighborhood commercial use. The proposal was thus incompatible in part with both the city's zoning classification and its comprehensive land use plan.

The city held various public hearings, and then preliminarily approved the amendment of its comprehensive land use plan to accommodate the proposed development. After the Metropolitan Council approved the amendment, the city held further public hearings and adopted ordinances amending the plan and rezoning the property to a classification suitable for office space and parking stalls.

The City of Richfield is a home rule charter city whose charter reserves to the voters the right to petition for referendum to approve or disapprove ordinances the city council enacts. The appellants are voters who live in Richfield. They filed with the city council petitions for referendums on the ordinances amending the comprehensive plan and rezoning the property in the proposed development. The city council rejected the petitions on the grounds that state law had preempted the right of referendum on the issues the appellants sought to include in the referendums and that any disapproval of the amendment and the rezoning would be in conflict with state law.

The appellants then brought this declaratory judgment action, seeking the district court's determination that the city charter guaranteed the right of referendum on the issues in question. The respondent city asserted a counterclaim, asking the court to declare the petitions invalid and to determine that the right of referendum did not apply to the matter in controversy.

After hearing the parties' cross-motions for partial summary judgment, the district court granted partial summary judgment to the respondent, holding the referendum would be in conflict with state law and that state law had preempted such land use issues. This appeal followed.

## ISSUE

State statutes purport to provide a single body of law and a uniform procedure for the process for approving or disapproving local land use laws. Do those state statutes preempt the power of referendum, reserved in a municipal charter, on the issue of the process for approving or disapproving local land use laws?

## ANALYSIS

There are no disputed facts on appeal. Thus, the question of whether state statutes prevail over a local charter provision is purely a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992). Because this is an appeal from a summary judgment in which there are no disputed material facts, we must decide whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

### Home Rule Charter

"Any local government unit when authorized by law may adopt a home rule charter for its government." Minn. Const. art

XII, § 4. State law authorizes cities to adopt charters for their governance: "Any city in the state may frame a city charter for its own government in the manner hereinafter prescribed * * *." Minn.Stat. § 410.04 (2000). City charters are framed and amended through appointed charter commissions. Minn.Stat. § 410.05, subd. 1 (2000). Charter commissions have express statutory authority to frame charters to allow for referendum by the voters to repeal ordinances. Minn.Stat. § 410.20 (2000). The City of Richfield adopted a home rule charter that reserves to the people of the city the powers of initiative and referendum. Richfield, Minn., City Charter, Ch. 5, § 5.01 (1996).

■■■ A city governed by a home rule charter enjoys as to local matters all the powers of the state, except when those powers have been expressly or impliedly withheld. *A.C.E. Equip. Co. v. Erickson,* 277 Minn. 457, 460, 152 N.W.2d 739, 741 (Minn.1967). Despite the broad governance authority conferred through a home rule charter, any charter provision that conflicts with state public policy is invalid. *Id.* Furthermore, all charter provisions remain subject to state law:

> The power conferred upon cities to frame and adopt home rule charters is limited by the provisions that such charter shall always be in harmony with and subject to the constitution and laws of the state.

*State ex rel. Town of Lowell v. City of Crookston,* 252 Minn. 526, 528, 91 N.W.2d 81, 83 (Minn.1958) (quotations omitted).

*State Law*

The district court held that the Municipal Planning Act of 1965(MPA) (enacted in 1965 and codified at Minn.Stat. §§ 462.351–.364 (2000)), and the Metropolitan Land Planning Act (MLPA) (enacted in 1976 and codified at Minn.Stat. §§ 473.85–.871 (2000)), together prevail over the referendum provision in Richfield's home rule charter.

In its policy statement, the MPA cites the legislature's finding that "municipalities are faced with mounting problems in providing means of guiding future development of land," and states that the MPA's purpose is

> to provide municipalities, in a single body of law, with the necessary powers and a uniform procedure for adequately conducting and implementing municipal planning.

Minn.Stat. § 462.351.

The MPA gives municipalities the authority to engage in comprehensive municipal planning activities. Minn.Stat. § 462.353, subd. 1. The act also provides that any community-based comprehensive municipal planning shall be coordinated with plans of the county and neighboring municipalities "in order to prevent the plan from having an adverse impact on other jurisdictions and to complement the plans of other jurisdictions." Minn.Stat. § 462.3535, subd. 2. And the act gives municipalities general zoning authority. Minn.Stat. § 462.357, subd. 1.

The MLPA is based on the legislature's findings that municipalities in the metropolitan area, including Richfield, are interdependent, that "problems of urbanization and development transcend local governmental boundaries," and that there is a need to coordinate development plans and controls among the metropolitan-area municipalities so as "to ensure coordinated, orderly and economic development." Minn.Stat. § 473.851.

The MLPA states one of the purposes shared by the MLPA, the interim ordinance authority in the MPA, and the Metropolitan Council's statutory duty to review comprehensive municipal plans for

"their compatibility with each other and conformity with metropolitan system plans" is

> to * * * establish requirements and procedures to accomplish comprehensive local planning with land use controls consistent with planned, orderly and staged development and the metropolitan system plans * * *.

*Id.*

*Preemption*

Holding that the MPA and MLPA preempt the referendum provision in Richfield's home rule charter, the district court noted that the Minnesota legislature has fashioned an intricate scheme for regulating the process for adopting local land use planning laws:

> The subject matter being regulated by the referenda at issue is the process by which a local governmental unit in the metropolitan area proposes, receives approval for, and adopts land use planning ordinances. The legislature has set forth an elaborate and extensive framework that regulates how a municipality in the metropolitan area adopts land use planning ordinances.

The district court has identified the precise issue in controversy for it is the process by which land use ordinances are approved or disapproved that the legislature has addressed in the MPA and MLPA. And it is the process for the final adoption and approval of land use ordinances that the appellants challenge when they contend that the voters have the ultimate right to control the approval and final adoption of such ordinances.

■ The grant to a municipality of the power to govern itself through a home rule charter and to include in the charter the right of referendum does not preclude the legislature from preempting charter authority on matters of state concern. *Town*

*of Lowell,* 252 Minn. 526, 91 N.W.2d 81, 83–84; *Lilly v. City of Minneapolis,* 527 N.W.2d 107, 111 (Minn.App.1995), *review denied* (Minn. Mar. 29, 1995).

■ The doctrine of preemption is premised on the right of the state to so extensively and intensively occupy a particular field or subject with state laws that there is no reason for municipal regulation. *Mangold Midwest Co. v. Vill. of Richfield,* 274 Minn. 347, 356, 143 N.W.2d 813, 819 (1966). If preemption has occurred, a local law purporting to govern, regulate, or control an aspect of the preempted field will be void, even if the local law is not in conflict with the state law. *Id.* The question of whether state law has preempted a field depends on the facts and circumstances of each case. *Id.*

■ In determining whether or not preemption has occurred, Minnesota courts consider four factors: (1) the subject matter regulated; (2) whether the subject matter is so fully covered by state law that it has become solely a matter of state concern; (3) whether any partial legislation on the subject matter evinces an intent to treat the subject matter as being solely a state concern; and (4) whether the nature of the subject matter is such that local regulation will have an adverse effect on the general state population. *Id.* at 358, 143 N.W.2d at 820.

The subject matter at issue in this appeal is the process by which municipalities adopt and finally approve ordinances pertaining to land use planning and zoning. We hold that the process for adopting and approving land use planning and zoning ordinances is so fully covered by state law that it has become solely a matter of state concern. The legislature has declared its intent to provide Minnesota municipalities with a "single body of law" that contains both the "necessary powers" and a "uni-

form procedure" for municipal planning. Minn.Stat. § 462.351. As the district court held, that single body of law, reflected in the MPA and MLPA, sets out a detailed and elaborate structure of procedural authority and processes for comprehensive land use planning and for ensuring reasonable compatibility with land use plans of other municipalities.

Recognizing that there is a need to prevent municipal plans from having an adverse impact on other jurisdictions, Minn. Stat. § 462.3535, subd. 2; that urbanization and land development transcend local boundaries, Minn.Stat. § 473.851; that compatibility and conformity among land use plans are important values, *id.;* and that controls are necessary to ensure planned, orderly, staged land development, *id.*, the legislature has enacted for municipalities throughout the state and for metropolitan-area municipalities interrelated statutes that are aimed at obviating piecemeal, fragmentary municipal land use and development, and that instead provide procedural mechanisms to foster comprehensive and reasonably compatible municipal development.

Local regulation by referendum of the process for land use planning and zoning is sufficiently antithetical to the avowed purposes of creating that single body of law and uniform procedure that it has substantial potential for adverse effect on the population. Whereas the MPA and MLPA provide for a comprehensive, orderly, and uniform process, referendum by its very nature is a narrow, piecemeal device that encourages sporadic and fragmented land development and use.

Unlike the process provided in the MPA and MLPA, referendum would necessarily proceed without an overriding concept of current and future development and land use needs of the community and of neighboring communities and without the benefit of the expertise of land use professionals.

▇ Thus, by its statements of policies and purposes and its enactment of comprehensive, uniform procedural laws for land use planning, the legislature has evinced its intent to occupy the field of the process by which municipal land use and development laws are finally approved or disapproved. And because local regulation by referendum would encroach into that occupied field and undermine the comprehensive and uniform nature of the process, we hold that the district court did not err in determining that referendum is preempted by the MPA and the MLPA.

Although we have considered all of appellants' arguments, in light of our holding we will briefly comment on only some of them.

Appellants refer to *Denney v. City of Duluth,* 295 Minn. 22, 202 N.W.2d 892 (1972), as "the central Minnesota case on point." *Denney* considered the single issue of whether Duluth's amendment of its comprehensive zoning ordinance was a legislative act or an administrative act. *Id.* at 893. If the former, Duluth's home rule charter provided for referendum. The supreme court held that in amending its zoning ordinance the city exercised its legislative power and that its legislative act was subject to the referendum provision of the charter. *Id.* at 896. But the court specifically declined to decide whether or not the MPA preempted the field of zoning regulation because that issue had not been litigated in the district court. *Id.* at 894 n. 6.

Appellants appear to conclude from *Denney* that referendum is available here. There is no contention that the City of Richfield's amendments were anything but legislative. And it is clear that the charter reserves the power of referendum. Given

those facts, we still face the question of whether referendum is preempted by state law. *Denney* left that issue entirely undecided and thus is not persuasive authority for the proposition that referendum is valid in this case.

■ Appellants also contend that by failing to expressly revoke the referendum with regard to city planning and zoning, the legislature did not intend to preempt it. However, Minn.Stat. § 462.01 (1961) (repealed 1965), the predecessor to the MPA, contained an independent referendum provision that the legislature repealed when it enacted the MPA. *See* Minn.Stat. § 645.39 (2000) (stating that when a law purports to revise all laws on a particular subject, and is intended to substitute for such former law, such law shall be construed to repeal all former laws upon the same subject). Even though the legislature did not expressly revoke the referendum, by substituting the MPA for section 462.01 the legislature made clear its intent to do so.

■ Citing the phrase "unless otherwise provided by charter," and other similar language used in various subdivisions of the MPA, appellants argue that the legislature intended to allow city charters and ordinances to specify the means for amending comprehensive land use plans and thus the legislature did not intend to occupy the field.

One of the provisions relates only to the number of governing body members necessary to vote for the adoption or amendment of a land use plan. Minn.Stat. § 462.355, subd. 3. The remaining provisions deal with the creation or authority of a planning agency or a board of appeals. There is nothing in these provisions that implies that the legislature intended to

allow a charter or ordinance to control the process by which final approval of a plan or zoning is obtained.

In occupying the field of the process for final approval or disapproval of land use and zoning ordinances and amendments, the legislature has not taken entirely from municipalities the right to make administrative decisions or even substantive determinations as to land use and zoning. Rather, the preemption concerns only the process reflected in the single body of uniform procedures in the MPA and MLPA. The "unless otherwise" language cited by appellants pertains to matters not integral to the preempted process and is not contrary to the notion of preemption as applied to process.

The district court did not err in granting partial summary judgment to respondent on the ground that state law preempts referendum as to the process for approving or disapproving municipal land use and development laws. Because this holding is dispositive, we need not reach the issue of conflict.

## DECISION

The district court properly determined that the Minnesota state legislature preempted referendum provisions in cities' home rule charters when it enacted the Municipal Planning Act and the Metropolitan Land Planning Act.

**Affirmed.**