**Donald HAUMANT, petitioner, Appellant,**

v.

**Susanne GRIFFIN, City of Minneapolis Director of Elections, Respondent.**

**No. A04–1746.**

Court of Appeals of Minnesota.

June 7, 2005.

Review Denied Aug. 24, 2005.

Alan W. Weinblatt, Amy Gavel, Weinblatt & Gaylord PLC, St. Paul, MN, for appellant.

Jay M. Heffern, Minneapolis City Attorney, Burt T. Osborne, Assistant Minneapolis City Attorney, Minneapolis, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge; HUDSON, Judge; and WRIGHT, Judge.

## OPINION

RANDALL, Judge.

Donald Haumant appeals from an order denying his request for an injunction requiring respondent, the City of Minneapolis' Director of Elections, to place a proposed charter amendment on the November 2, 2004 general-election ballot for Minneapolis. Because the election has passed, Haumant now seeks an order requiring respondent to hold a special election. Haumant argues that (1) respondent must submit a proposed charter amendment to the voters unless it is manifestly unconstitutional, (2) the proposed charter amendment is not unconstitutional, (3) respondent's reasons to keep the amendment off the ballot are invalid, (4) voters should be allowed to decide the issue, and (5) proposed Minneapolis charter amendments are not required to relate to the general form and structure of municipal government.

## FACTS

The facts are not in dispute. On August 10, 2004, appellant and other members of an organization known as Citizens Organized for Harm Reduction (C.O.H.R.) filed a signed petition for a proposed charter amendment with the Minneapolis Charter Commission. The proposed charter amendment reads as follows:

> Be it established by the people of Minneapolis that the Minneapolis City Charter be amended by adding the following as subsection (j) to Chapter 14, section 3: To require that the City Council shall authorize, license, and regulate a reasonable number of medical marijuana distribution centers in the City of Minneapolis as is necessary to provide services to patients who have been recommended medical marijuana by a medical or osteopathic doctor licensed to practice in the State of Minnesota to the extent permitted by State and Federal law.

Appellant's petition, in accordance with the appropriate procedure, was forwarded to the Minneapolis City Council (City Council). And on August 20, 2004, the City Council conducted a hearing on the petition. After the hearing, the City Council ruled against inclusion of appellant's petition on the November 2, 2004 Minneapolis ballot by a vote of 8–4, with one abstention.[1] In support of its exclusion of appellant's proposed ballot measure, the City Council made the following findings:

> 1. The proposed charter amendment is manifestly unconstitutional because it conflicts with federal law in violation of the supremacy clause of Article VI of the United States Constitution and is, therefore, preempted by federal law.
>
> 2. The proposed amendment contravenes state public policy and is preempted by Minnesota law.
>
> 3. The proposed amendment is an unauthorized, non-legal initiative that addresses specific operations of municipal government rather than a valid charter amendment that addresses the general form and structure of municipal government.

Appellant filed a petition for inclusion on the ballot in Hennepin County District Court on September 3, 2004. After a hearing and briefing on the issues, the district court denied appellant's petition. The court stated that it agreed "with Re-

1. Our review of the minutes of the City Council indicates that the district court's finding that the City Council rejected this ballot measure by a vote of 13–0 is erroneous.

spondent that the proposed charter amendment is *manifestly unconstitutional*" and held that the proposed amendment was preempted by both federal and state law. Further, the district court found that "the allegedly exculpatory clause contained at the end of the proposed charter amendment cannot rescue the amendment from charges that it is manifestly unconstitutional where it is clear that the proposed amendment seeks to legislate in areas where the city is preempted." Finally, the district court held that "the proposed charter amendment is an initiative cloaked as a charter amendment" and, because the City of Minneapolis elected not to include initiative powers as part of its home rule charter, the proposed amendment was improper. After a pair of unsuccessful attempts to obtain expedited review from the Minnesota Supreme Court and this court, this appeal followed.

## ISSUE

Was it proper for the Minneapolis City Council to refuse to place appellant's proposed charter-amendment petition on the November 2 ballot?

## ANALYSIS

We start with the basics. Minneapolis is a home rule charter city whose charter reserves to its citizens the right to propose charter amendments by petition to its charter commission. The Minnesota Constitution provides that "[a]ny local government unit when authorized by law may adopt a home rule charter for its government." Minn. Const. art. XII, § 4. City charters are framed and amended through appointed charter commissions. Minn. Stat. § 410.05, subd. 1 (2004). Section 410.12 of the Minnesota Statutes sets forth the process to be followed for a proposed charter amendment by citizen petition, and it states that "[t]he charter commission may propose amendments to such charter and shall do so upon the petition of voters equal in number to five percent of the total votes cast at the last previous state general election in the city." Minn.Stat. § 410.12, subd. 1 (2004). Subdivision 4 also states that "[a]mendments shall be submitted to the qualified voters at a general or special election and published as in the case of the original charter." Minn. Stat. § 410.12, subd. 4 (2004).

Based on these two sentences, and specifically relying on the use of the word "shall," appellant argues that, where the petitioners have met the technical requirements for amendment proposals, the City Council has a mandatory duty to place all proposed charter amendments on the ballot. Respondent points out that this argument is subject to the doctrine of preemption, and by the fact that proposed charter amendments in Minnesota are qualified by the judicially-created requirement that proposed charter provisions not be "manifestly unconstitutional." *See Minneapolis Term Limits Coalition v. Keefe,* 535 N.W.2d 306, 308 (Minn.1995).

### 1. State Law and Policy

#### A. Preemption

Where there are no disputed facts on appeal, the question of whether state statutes prevail over a local charter provision is a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue,* 488 N.W.2d 254, 257 (Minn.1992). Appellant argues that the real issue here is the City Council's refusal to allow his proposed charter amendment onto the ballot, and not whether his amendment conflicts with state law. This argument ignores the settled principle that "[t]he power conferred upon cities to frame and adopt home rule charters is limited by the provisions that such charter shall always be in harmony with and sub-

ject to the constitution and laws of the state." *Nordmarken v. City of Richfield,* 641 N.W.2d 343, 347 (Minn.App.2002) (quoting *Town of Lowell v. City of Crookston,* 252 Minn. 526, 528, 91 N.W.2d 81, 83 (1958)), *review denied* (Minn. June 18, 2002). This court has explicitly stated that a home rule charter "does not preclude the legislature from preempting charter authority on matters of state concern." *Id.* at 348.

The question of whether state law has preempted a field depends on the facts and circumstances of each case. *Id.* at 348. "The doctrine of preemption is premised on the right of the state to so extensively and intensively occupy a particular field or subject with state laws that there is no reason for municipal regulation." *Id.* (citing *Mangold Midwest Co. v. Vill. of Richfield,* 274 Minn. 347, 356, 143 N.W.2d 813, 819 (1966)). If preemption has occurred, a local law purporting to govern an aspect of the preempted field is void even if the law is not directly in conflict with the state law. *Id.*

There are four factors that Minnesota courts consider in determining whether preemption has occurred: (1) the subject matter regulated; (2) whether the subject matter is so fully covered by state law that it has become solely a matter of state concern; (3) whether any partial legislation on the subject matter evinces an intent to treat the subject matter as being solely a state concern; and (4) whether the nature of the subject matter is such that local regulation will have an adverse effect on the general state population. *Mangold,* 274 Minn. at 358, 143 N.W.2d at 820.

Addressing the first two factors, we hold that the subject matter, the possession and distribution of marijuana, is one that is and has been historically covered by state and federal law. Minn.Stat. § 152.021 (2004), categorically prohibits the distribution and possession of marijuana without any exception for municipal regulation. As for the third factor, this court has stated, in the context of a criminal appeal, that:

> The Minnesota legislature has attached criminal penalties to the possession, sale or cultivation of marijuana. Minn.Stat. §§ 152.01, subd. 7, 152.02, subd. 1 (1990), 152.09, subd. 1(1) (1988). The statutory classification of marijuana as a Schedule I substance implies a determination that marijuana has "no currently accepted medical use in the United States." Minn.Stat. § 152.02, subd. 7(1) (1990). The legislature has enacted a single exception, in the THC Therapeutic Research Act (TRA), exempting from criminal sanctions possession or use of marijuana for cancer patients undergoing chemotherapy.... Minn.Stat. § 152.21, subds. 1, 3, 6 (1990). These statutory provisions demonstrate that the legislature has specifically addressed and determined the possible medical uses of marijuana.

*State v. Hanson,* 468 N.W.2d 77, 78 (Minn. App.1991), *review denied* (Minn. June 3, 1991). Review of the current version of Minn.Stat. § 152, indicates that Minnesota's stance on the regulation of marijuana has not changed significantly since the *Hanson* decision. *See* Minn.Stat. §§ 152.021–152.029 (2004). *Hanson* holds that the legislature has spoken on the question of exempting certain uses of marijuana from the criminal statutes. The legislature has evinced its intent to treat this matter as one of state concern. Finally, addressing the fourth factor, it is clear that allowing inconsistent treatment of marijuana laws between municipalities would make the state's marijuana laws difficult to enforce fairly.

Accordingly, we conclude that the legislature, by virtue of Minn.Stat. §§ 152.021–152.029 has indicated its intent to occupy the field of marijuana regulation and; thus, preempt municipal action. Forcing an election would be an exercise in futility and a waste of much-needed municipal dollars. *See Nordmarken,* 641 N.W.2d at 348 (holding that if preemption has occurred, a local law purporting to govern an aspect of the preempted field is void even if the law is not directly in conflict with the state law).

Appellant argues that his preemption problem is alleviated by inclusion of the phrase "to the extent permitted by State and Federal law" in the proposed amendment. He argues that, while the City Council could not presently pass an ordinance pursuant to the proposed charter amendment, "the City Council may wait until state law permits the distribution of marijuana for medicinal use and then act knowing it has the support of the citizenry." Accepting appellant's argument here would result in this court ordering the Minneapolis City Council to hold a special election on an amendment that would have no effect. Such a result is without support in the law. *See Hous. & Redevelopment Auth. of Minneapolis v. City of Minneapolis,* 293 Minn. 227, 234, 198 N.W.2d 531, 536 (1972) (finding that it was proper for the district court to enjoin an election "rather than permit the administration and the voters of the city of Minneapolis to experience the frustration and expense of setting up election machinery and going to the polls in a process which was ultimately destined to be futile").

**B. Significance of the phrase "manifestly unconstitutional" and public policy**

■ The Minnesota Supreme Court has stated that "when a proposed charter amendment is manifestly unconstitutional, the city council may refuse to place the proposal on the ballot." *Minneapolis Term Limits,* 535 N.W.2d at 308 (citing *Davies v. City of Minneapolis,* 316 N.W.2d 498 (Minn.1982)); *see also State ex rel. Andrews v. Beach,* 155 Minn. 33, 35, 191 N.W. 1012, 1013 (1923) (ordering that a proposed amendment be placed on the ballot but stating, "[w]e do not hold that an amendment to a charter must be submitted, even though it is manifestly unconstitutional"). Appellant asserts that, because the supreme court chose the phrase "manifestly unconstitutional," a proposed charter amendment may only be kept off the ballot if it violates a specific provision of the Minnesota or United States Constitution. Appellant also argues that this court must begin with the presumption that his proposed charter amendment is constitutional and thus, it "may not be stricken [from the ballot] unless the challenging party demonstrates that it is in violation of the constitution beyond a reasonable doubt." *Minneapolis Term Limits,* 535 N.W.2d at 310 (Stringer, J., dissenting).

Appellant's argument, which is based on a dissenting opinion, relies on an overly strict reading of the limits that have historically been imposed on charter amendment proposals by Minnesota courts. Our review of the few cases dealing with this issue indicates that appellant's limitations on the "manifestly unconstitutional" analysis are artificial and misguided. *Nordmarken,* 641 N.W.2d at 347 ("[d]espite the broad governance authority conferred through a home rule charter, any charter provision that conflicts with state public policy is invalid"); *see also Town of Lowell,* 252 Minn. at 528, 91 N.W.2d at 83 (stating that the "adoption of any charter provision contrary to the public policy of the state, as disclosed by general laws or its penal code, is ... forbidden"); *Andrews,* 155 Minn. at 35, 191 N.W. at 1013

(noting that it "is not maintained that the proposed amendments contravene the public policy of the state or any statutory or constitutional requirement" and such a "question is not now before us, and consideration thereof is not necessary to the determination of this appeal").

It is clear that although courts have often used the phrase "manifestly unconstitutional" in their analysis, this phrase has never been interpreted as barring only those proposed amendments that are proved to be unconstitutional beyond a reasonable doubt. Appellant's attempt to add an additional element to the term "manifestly" is not persuasive. As the City of Minneapolis pointed out, there are no such gradations in our analysis. Courts have never said that a proposal, being only "somewhat unconstitutional" should be allowed to pass. Such a distinction would be illogical.

Minnesota courts have, over the years, required that charter provisions be not only constitutional, but also in accordance with state public policy. While determining the exact bent of "state public policy" might be difficult in certain instances, it is not so here. Section 152.021 of the Minnesota Statutes categorically prohibits the manufacture, distribution, and/or possession of marijuana, and provides criminal penalties for violation of its prohibition. It seems clear that appellant's proposed charter amendment is not only preempted by state law, but also that it would be violative of state public policy as disclosed in the Minnesota Penal Code. *See Town of Lowell,* 252 Minn. at 530, 91 N.W.2d at 84. We understand appellant's equitable/medical argument but, for now, legislative action is the potential source of the relief he seeks.

**2. Federal Law**

█ In addition to finding the proposed amendment violative of Minnesota state law and existing public policy, the district court found that Congress "has comprehensively legislated on the legality of marijuana and addressed the issue of controlled substances through the United States Code such that it has occupied the field of regulation." Again, the issue of preemption is one of law that this court reviews de novo. *See Nordmarken,* 641 N.W.2d at 348–49. While this topic need not be reached in light of the analysis above, a short discussion of the federal issues follows.

As in Minnesota, under the federal Controlled Substances Act (CSA), 21 U.S.C. § 801 (2004) *et seq.*, marijuana is designated as a Schedule I controlled substance. Designation as a Schedule I substance under the CSA means that a determination has been made that (1) the substance "has a high potential for abuse," (2) the substance "has no currently accepted medical use in treatment in the United States," and (3) there is "a lack of accepted safety for use of the drug or other substance under medical supervision." *Id.* at § 812(b)(1). And the CSA makes it illegal to knowingly and intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." *Id.* at § 841(a)(1). Finally, Congress, in the CSA, explicitly stated that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." *Id.* at § 801(6).

Appellant relies on the Ninth Circuit's decision in *Raich v. Ashcroft,* 352 F.3d 1222 (9th Cir.2003), *cert. granted,* — U.S. —, 124 S.Ct. 2909, 159 L.Ed.2d 811 (U.S. June 28, 2004), for his assertion that "it is likely that the federal Controlled Substances Act may be found to be unconstitutional as applied in medical marijuana

states." *See Raich,* 352 F.3d at 1229 (distinguishing "the intrastate, noncommercial cultivation, possession and use of marijuana for personal medical purposes" from drug trafficking, and finding that "[a]s applied to the limited class of activities presented by this case, the CSA does not regulate commerce or any sort of economic enterprise"). This assertion has some validity, but until the U.S. Supreme Court decides the issue, the federal CSA makes possession of marijuana for any purpose illegal.[2]

In the event that appellant's proposed charter amendment directing the Minneapolis City Council to "authorize, license, and regulate a reasonable number of medical marijuana distribution centers in the City of Minneapolis" were to pass, it would be, at least for now, in conflict with current federal law and would thus be "without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992).

Appellant again argues that because the proposed amendment includes the phrase "to the extent permitted by State and Federal law," the amendment could never be preempted by, nor could it contravene, *any* existing law and, therefore, must go to the voters. We disagree. *Cf. Davies,* 316 N.W.2d at 504 (stating that "when a proposed charter amendment appears to be manifestly unconstitutional, the City Council must have the authority to avoid what would amount to a futile election and a total waste of taxpayers' money") and (citing *Hous. & Redevelopment Auth.,* 293 Minn. at 234, 198 N.W.2d at 536). If appellant's argument were accepted, it would allow *any* group or person with sufficient resources to comply with the technical requirements of proposing a charter amendment, to force a referendum on *any* issue simply by appending the phrase "to the extent permitted by State and Federal law" onto their amendment. That result would be absurd, and would gut the statutes and caselaw surrounding this issue. A parade of personal or "vanity" amendments would overtake the voting process if one "magic bullet" phrase trumped all concern for preemption, constitutionality, public policy, and common sense.

### 3. Initiative Versus Charter Amendment

█ Finally, while appellant failed to directly address this issue, the district court's finding that "the proposed charter amendment is an initiative cloaked as a charter amendment" has merit. As respondent points out, the City of Minneapolis elected not to include initiative powers as part of its home rule charter. Minneapolis residents are not permitted to directly implement legislation by petition. By his actions, appellant is furthering a cause that his elected representatives, so far, have refused to: namely, to lay the groundwork for the use of marijuana for medicinal purposes in Minnesota.

Appellant makes some interesting legal arguments and has spent considerable resources in furthering this cause, but we see appellant's proposed charter amendment as an attempt to circumvent Minneapolis' bar on legislation by initiative.

## DECISION

Appellant's proposed charter amendment would be deemed preempted by

2. We note for the record that the United States Attorney's letter, submitted by respondent in this matter, played no part in our analysis of the federal preemption issue. We are not bound in any fashion by the political gamesmanship in Congress over marijuana laws.

Minnesota and federal laws. We conclude that appellant's proposed amendment is "manifestly unconstitutional" as that phrase has been defined by Minnesota courts. Accordingly, we affirm the district court's denial of injunctive relief.

**Affirmed.**