Joel JENNISSEN, et al., Appellants,

v.

CITY OF BLOOMINGTON, Respondent.

A17-0221

Court of Appeals of Minnesota.

Filed November 20, 2017

Gregory J. Joseph, Joseph Law Office PLLC, Bloomington, Minnesota (for appellants)

George C. Hoff, Shelley M. Ryan, Hoff Barry, P.A., Eden Prairie, Minnesota (for respondent)

Susan L. Naughton, League of Minnesota Cities, St. Paul, Minnesota (for amicus curiae League of Minnesota Cities)

Considered and decided by Florey, Presiding Judge; Schellhas, Judge; and Kalitowski, Judge.[*]

SCHELLHAS, Judge

## OPINION

Appellants challenge the district court's summary judgment in favor of the city and the ruling that appellants' proposed city charter amendment to require voter approval before the city establishes a system of organized collection of solid waste is preempted by Minn. Stat. § 115A.94. Because we conclude that by enacting Minn. Stat. § 115A.94 the legislature has preempted the field of legislation on a municipality's establishment of organized collection, we affirm.

## FACTS

In late 2014, respondent City of Bloomington began the statutory process under the MWMA to change from an open sys-

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

tem of collection of solid waste to a system of organized collection. Under an open system, residents are free to hire a city-licensed collector to collect their solid waste; under an organized-collection system, the city contracts with a specific collector or group of collectors to remove garbage in defined areas. Minn. Stat. § 115A.94, subd. 1.

Bloomington is a home-rule charter city under Minnesota Statutes chapter 410. The city's charter reserves for its citizens the power to bring forth ballot initiatives, referenda, and amendments to the city charter. Bloomington, Minn., City Charter (BCC) §§ 5.01-.12 (2017); *see* Minn. Stat. § 410.12 (2016).

In March 2015, appellants, a group of city residents opposed to the city's efforts to implement organized collection, petitioned the city for a ballot initiative on an ordinance that would require voter approval as a prerequisite to the city's adoption of organized collection. The city attorney determined that the MWMA preempts appellants' proposed ordinance and that a ballot initiative for the proposed ordinance constituted a "premature referendum" because it sought to refer an issue to the voters before the city council actually passed an ordinance. In late June 2015, appellants sued the city, seeking an order to compel approval of the petition for a ballot initiative. (*Jennissen I*).

After a public hearing on June 22, 2015, the city council resolved to adopt a system of organized collection of solid waste. On December 21, the city council adopted an organized-collection ordinance, effective December 31. On December 21, the city also executed a five-year contract with Bloomington Haulers LLC, a consortium of solid-waste collectors. The contract detailed the types of waste to be collected, the dates and times of waste pickup in specified city zones, and the rights and responsibilities of the parties.

On April 25, 2016, the district court granted summary judgment in favor of the city in *Jennissen I*. The court concluded that appellants' proposed ordinance was neither a proper initiative nor a proper referendum because it did not actually propose a new ordinance or refer to an ordinance passed by the city council. The court concluded that appellants' goal to limit the power of the city council could only be achieved through amendment of the city charter under Minn. Stat. § 410.12.

Appellants next submitted to the city a petition for a proposed charter amendment to be placed on a ballot. Appellants' proposed charter amendment was nearly identical to the prior proposed ordinance and read:

> Unless first approved by a majority of the voters in a state general election, the City shall not replace the competitive market in solid waste collection with a system in which solid waste services are provided by government-chosen collectors or in government-designated districts. The adoption of this charter amendment shall supersede any ordinances ... related to solid waste adopted by the City Council in 2015-2016.

On June 27, 2016, the city council found that the proposed amendment was "manifestly unconstitutional" because it impaired the city's contract with the consortium, interfered with the city's "lengthy and thoughtful legislative process," and was preempted by the MWMA. The city council therefore rejected the proposed charter amendment.

In July 2016, appellants sued the city, seeking to compel the city to place the proposed charter amendment on the next general-election ballot. (*Jennissen II*). The

district court granted the city summary judgment on preemption grounds.

Appellants challenge the summary judgment in favor of the city. The city cross-appeals the district court's denial of its other grounds for summary judgment.

## ISSUE

Does Minnesota Statutes section 115A.94 of the MWMA preempt a proposed city charter amendment that requires a city to seek and obtain voter approval before establishing a system of organized collection of solid waste?

## ANALYSIS

 Appellants argue that the district court erred as a matter of law by concluding that the MWMA preempts the proposed city charter amendment. The question of whether a state statute preempts a municipal charter provision is a question of law, which appellate courts review de novo. *Bicking v. City of Minneapolis*, 891 N.W.2d 304, 312 (Minn. 2017). Because this is an appeal from summary judgment and the facts are not in dispute, this court reviews de novo whether the district court erred in its application of the law. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn. 1992); *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990).

The Minnesota Constitution allows any local government unit to adopt a home-rule charter for its government. Minn. Const. art XII, § 4; *see Bicking*, 891 N.W.2d at 306 (explaining how a city charter is framed and amended). A city may frame a charter for its own government in a man-

ner as provided under Minn. Stat. §§ 410.01-.33 (2016), and it may provide for a scheme of municipal government that is not inconsistent with the Minnesota Constitution. Minn. Const. art XII, § 5; Minn. Stat. § 410.04; *Bicking*, 891 N.W.2d at 306. A "charter commission" is appointed to both frame and later amend a city charter. Minn. Const. art XII, § 5; Minn. Stat. § 410.05.

 Municipalities have no inherent powers and "can enact regulations only expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred." *Bicking*, 891 N.W.2d at 312 (quotations omitted). "[C]harter provisions (and therefore charter amendments) must be consistent with state law and state public policy."[1] *Id.*; *see also State ex rel. Town of Lowell v. City of Crookston*, 252 Minn. 526, 528, 91 N.W.2d 81, 83 (1958) ("The power conferred upon cities to frame and adopt home rule charters is limited by the provision that such charter shall always be in harmony with and subject to the constitution and laws of the state." (quotation omitted)). A home-rule charter does not preclude the legislature from preempting charter authority on matters of state concern. *Town of Lowell*, 252 Minn. at 528–29, 91 N.W.2d at 83–84.

Once a city adopts a charter, proposals to amend the charter can be made by the city's charter commission or by "petition of five percent of the voters of the local government unit." Minn. Const. art XII, § 5; Minn. Stat. § 410.12, subd. 1. After voters have submitted a valid petition to amend the city charter and the city clerk verifies the signatures on the petition, the pro-

---

1. Although the proposed charter amendment here was never enacted as a charter provision, the supreme court has concluded that whether a proposed charter amendment should be placed on a ballot is a justiciable controversy. *See Bicking*, 891 N.W.2d at 311–12 (noting that "municipal officials are not required to undertake what would amount to a futile election and a total waste of taxpayers' money" by placing an unlawful proposed charter amendment on the ballot) (quotation omitted).

posed charter amendment must be "submitted to the qualified voters at a general or special election." Minn. Stat. § 410.12, subds. 3, 4; *Bicking*, 891 N.W.2d at 306–07.

A state statute may preempt a local law in three ways. First, "express preemption" exists when the state statute declares the extent to which it preempts local regulation. *See In re Estate of Barg*, 752 N.W.2d 52, 63–64 (Minn. 2008) (discussing three types of preemption in context of federal law preempting state law); *State v. Kuhlman*, 722 N.W.2d 1, 4 (Minn. App. 2006), *aff'd*, 729 N.W.2d 577 (Minn. 2007) (explaining three ways state statute may preempt local ordinance). Second, "conflict preemption" exists between state and local laws when the laws "contain express or implied terms that are irreconcilable with each other, when the ordinance permits what the statute forbids, or when the ordinance forbids what the statute expressly permits." *Bicking*, 891 N.W.2d at 313 (quotation omitted). Third, "field preemption" exists when the legislature intends a state law to exclusively occupy a particular field of legislation, allowing no room for local laws attempting to impose additional regulation in the same field. *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 350–52, 143 N.W.2d 813, 815 (1966). When field preemption occurs, a municipal law attempting to regulate any aspect of the preempted field is void, even if the local law does not conflict with the state statute. *Id.*

In this case, we need only address the question of field preemption. In order to determine if the proposed charter amendment is field preempted, we must examine the organized-collection section of the MWMA and the MWMA as a whole. The legislature declared that the purpose of the MWMA is to "protect the state's land, air, water, and other natural resources and the public health by improving waste management in the state" in order to, among other things, (1) reduce waste, (2) coordinate solid-waste management among political subdivisions, and (3) promote the orderly and deliberate development and financial security of waste facilities. Minn. Stat. § 115A.02(a). The waste-management goal of the MWMA is to "foster an integrated waste management system in a manner appropriate to the characteristics of the waste stream." *Id.* (b). The MWMA also encourages recycling through the "separation and recovery of material and energy from waste." *Id.* (a).

The MWMA describes two processes, one of which a city must follow when pursuing the establishment of organized collection. Minn. Stat. § 115A.94, subds. 4a, 4d. Under both statutory processes, the city must provide public notice, hold hearings, and invite and employ the assistance of licensed collectors. *Id.*, subds. 3(c), 4c.

Under the MWMA, a city must first establish an "organized collection options committee" (OCOC) that examines and evaluates various methods of organized collection. *Id.*, subd 4a. The OCOC must determine whether a system of collection with a single collector or a group of multiple collectors is preferable. *Id.* And the OCOC must establish a list of criteria for evaluating the organized collection methods, which may include: (1) costs to residential subscribers, (2) miles driven by collection vehicles on city streets and alleys, (3) the city's operating costs, (4) whether incentives for waste reduction are provided, (5) impacts on solid-waste collectors, and (6) "other physical, economic, fiscal, social, environmental, and aesthetic impacts." *Id.*, subd. 4b.

The MWMA requires the OCOC to seek input from local officials, residents, and licensed collectors and then must issue a report on its research, findings, and any recommendations to the city's governing

body. *Id.* The city's governing body must consider the OCOC's recommendations, provide public notice, and hold at least one public hearing. *Id.*, subd. 4c. If the city decides to implement organized collection, six months must elapse before waste collection under the new system begins. *Id.*

Under the second process in the MWMA, the city has the option—after first notifying the public and licensed collectors of its intention to consider organized collection—to meet and negotiate with licensed collectors to develop an organized-collection proposal. *Id.*, subd. 4d. This process must occur within 60 days after providing notice and before the formation of an OCOC. *Id.* The proposal must include "identified city . . . priorities, including issues related to zone creation, traffic, safety, environmental performance, service provided, and price. . . ." *Id.* This process bypasses most of Minn. Stat. § 115A.94, subds. 4a–c.

The MWMA makes clear that a city's exercise of the authority granted under the statute is optional and is "in addition to authority to govern solid waste collection granted by other law." *Id.*, subd. 6(a). A city "may exercise any authority granted by any other law, including a home-rule charter, to govern collection of solid waste." *Id.*, subd. 6(c).

■ In determining whether field preemption has occurred, Minnesota courts examine the following factors: (1) the subject matter regulated; (2) whether the subject matter is so fully covered by state law that it has become solely a matter of state concern; (3) whether any partial legislation on the subject matter evinces an intent to treat the subject matter as being solely a state concern; and (4) whether the nature of the subject matter is such that local regulation will have an adverse effect on the general state population. *Mangold*, 274 Minn. at 358, 143

N.W.2d at 820. The question of whether state law has preempted a field depends on the facts and circumstances of each .case. *Id.* at 357, 143 N.W.2d at 819.

*First Mangold Factor*

■ The MWMA clearly regulates the subject matter of how municipalities implement a system of organized collection of solid waste. *See* Minn. Stat. § 115A.01–.99 (defining organized collection, describing local authority, and providing for process of establishing organized collection). As the district court found, the subject matter to be regulated concerns "the process a municipality must follow in order to implement organized collection." The parties agree.

*Second Mangold Factor*

We must determine whether the establishment of organized collection is so fully covered by the MWMA that it has become solely a matter of state concern. Under the MWMA, if a city decides to implement organized collection, the city must follow a detailed and extensive process to pass an ordinance providing for organized collection. Minn. Stat. § 115A.94. The statutory process ensures that the public and licensed collectors receive notice and that the city consults with interested parties, including city officials responsible for solid-waste issues. *Id.*, subds. 3-4d. The process also encourages cities to consider not only economic concerns, but also environmental and social concerns, such as waste reduction and the impact of garbage trucks on city streets and alleys.

When a city adopts a proposal with a group of licensed collectors, it must address "environmental performance." *Id.*, subd. 4d. The MWMA prohibits the impairment of recycling services if a city adopts organized collection. *Id.*, subd. 3(b). As the district court here noted, the

process ensures input from "a variety of professionals and experts, as well as research on environmental, social, and economic issues." Further, a uniform process of instituting organized collection fosters an "integrated waste management system," because it promotes a statewide system of organized collection where a uniform set of criteria are considered by municipalities. In sum, the MWMA's processes advance the MWMA's stated goal to improve waste management in the state while protecting the state's environment.

Appellants assert that the MWMA does not provide an *exclusive* process that a city must follow because the plain language in Minn. Stat. § 115A.94, subd. 6, demonstrates that the entire purpose of the legislation is to aid a city in its decision-making process. Subdivision 6 states that organized collection is "optional" and "is in addition to" authority to govern solid-waste collection granted by other laws, and a city may exercise "any authority granted by any other law, including a home rule charter, to govern collection of solid waste." Minn. Stat. § 115A.94, subds. 6(a), 6(c).

 Appellants' argument requires this court to construe the meaning of Minn. Stat. § 115A.94, subd. 6. "Interpretation of a statute is a question of law that we review de novo." *500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 290 (Minn. 2013). "If a statute is unambiguous ... we must apply the statute's plain meaning." *Id.* We conclude that the language in Minn. Stat. § 115A.94, subds. 6(a), 6(c), is unambiguous.

Subdivision 6 recognizes a city's authority to govern the collection of solid waste and the city's authority to not opt to establish organized collection. Minn. Stat. § 115A.94, subd. 6. A city's authority to govern collection of solid waste is not preempted and is not at issue in this appeal. For example, the language in subdivision 6 allows a city to continue to govern collection by licensing collectors, determining what sort of waste must be removed by collectors, or restricting the times and days when collection may occur. Only when a city chooses to establish organized collection, as the city here did, is a city's authority subject to and preempted by the MWMA. As noted by the district court in this case, subdivisions 4a to 4d address the process of choosing or establishing organized collection, not governance of an existing system of solid-waste collection.

Appellants rely on *In re Appeal of Rocheleau*, 686 N.W.2d 882 (Minn. App. 2004), *review denied* (Dec. 24, 2004), a case involving regulation of septic systems, for the proposition that the presence of extensive processes is not sufficient, on its own, to support a finding of preemption. In *Rocheleau*, this court concluded that "[b]ecause [Minn. Stat. § 115.55 (2002)] expressly provide[d] for local regulation by permitting local governments to enact more restrictive ordinances, the legislature ha[d] made it clear that the doctrine of preemption d[id] not preclude all local ordinances that cover the same subject matter as the statute control[led]." 686 N.W.2d at 891. This court therefore concluded that the statute did not "occupy the field" of regulating individual sewage treatment systems. *Id.*

*Rocheleau* is inapposite to the case before us because, despite the detailed regulatory scheme established in Minn. Stat. § 115.55 (2002), the statute explicitly directed counties to adopt local ordinances that comply with minimum standards under promulgated rules, Minn. Stat. § 115.55, subds. 2(a), (3)(a), and the promulgated rules, in turn, explicitly provided that local ordinances may be more restrictive than the statute and rules. Minn. R.

7080.0305 (2003). The statute and rules specifically allowed room for local regulation on the same subject. By contrast, the MWMA leaves no room for local regulation of the process a city must follow when establishing organized collection.

Moreover, this court has generally concluded that, under the second and third *Mangold* factors, the legislature's extensive regulation of a subject is evidence that the matter has become one solely of state concern. *Nw. Residence, Inc. v. City of Brooklyn Center*, 352 N.W.2d 764, 773 (Minn. App. 1984), *review denied* (Minn. Jan. 4, 1985); *see also Nordmarken v. City of Richfield*, 641 N.W.2d 343, 349 (Minn. App. 2002) (concluding that field preemption existed when the legislature set out a "detailed and elaborate structure of procedural authority and processes" for municipal land-use planning), *review denied* (Minn. June 18, 2002). Likewise, in this case, the detailed process spelled out in the MWMA is evidence the matter has become one of sole state concern.

Finally, the legislature knows how to ensure the electorate's participation in a process through ballot questions. For example, Minnesota Statutes section 340A.413 (2016), allows voter authorization of a city's issuance of additional liquor licenses. Minnesota Statutes section 412.301 (2016), provides a process of voter approval of a city's issuance of certificates of indebtedness or capital notes. Minnesota Statutes section 205.07, subdivision 3 (2016), permits a referendum on a city ordinance that changes the city's election year. No similar provision is present in the MWMA. We therefore conclude that the second *Mangold* factor weighs in favor of preemption.

*Third Mangold Factor*

The third *Mangold* factor is not applicable because the MWMA is not "partial"; it fully describes the process that is required for a city to implement organized collection.

*Fourth Mangold Factor*

Appellants argue that, unlike the Municipal Planning Act (MPA) and the Metropolitan Land Planning Act (MLPA) in *Nordmarken*, a city's waste-collection activities within its own territorial limits do not "transcend local boundaries" in a way that zoning and land-use decisions do between adjacent cities. In *Nordmarken*, the City of Richfield, a home-rule charter city, approved an amendment to its comprehensive land-use plans to accommodate an office-space development not in conformance with local zoning. 641 N.W.2d at 346. In response, Richfield voters submitted a petition for a referendum to approve the city council's amendments to the land-use plan. *Id.* The city council rejected the petition on the grounds that the MPA and MLPA preempted the subject matter of the referendum attempt. *Id.* This court agreed with the city that the legislature intended to create a "uniform procedure" for municipal planning and that local regulation by referendum of the process of land-use planning was antithetical to that purpose, in part because "urbanization and land development" transcend local boundaries. *Id.* at 349.

While the connection between the local regulation and the adverse effects that transcend local boundaries is stronger in *Nordmarken* than in this case, appellants' reading of the organized-collection statute is too narrow and does not account for the broader public policy concerns of the MWMA. The MWMA, among other things, seeks to reduce the state's waste, protect the entire state's environment, promote recycling, and coordinate solid-waste management among political subdivisions. Minn. Stat. § 115A.02. If city voters could override the process under Minn. Stat. § 115A.94 by charter amendment, voters

might not promote the broad policy concerns that the legislature found important in enacting the MWMA.

The process mandated by the MWMA ensures that a city choosing to establish organized collection will consider the state's environment and encourages a local committee to consider waste-reduction and other noneconomic concerns. If a city could ignore the state's broad environmental concerns, the state's general population would be adversely effected.

Appellants argue that the district court's conclusion that the establishment of organized solid-waste collection is field preempted will lead to absurd results because no divergence from the process will be permissible, including a "decision to alter course and maintain a competitive waste system." This argument lacks merit because the statute allows a city to establish organized collection *only after* compliance with the requirements of Minn. Stat. § 115A.94, subds. 4a-4d. Minn. Stat. § 115A.94, subd. 2. The MWMA does not preclude a city from reconsidering and terminating a system of organized collection once established. We conclude that the fourth *Mangold* factor weighs in favor of preemption.

After weighing the *Mangold* factors, we conclude that appellants' proposed charter amendment is preempted by state law under the doctrine of field preemption. Because we agree with the district court on the preemption issue, we do not address appellants' additional request for a mandatory injunction and the other issues raised by the city on cross-appeal.

## DECISION

Section 115A.94 of the MWMA occupies the field of legislation regarding the process that a city must follow to establish a system of organized collection of solid waste. The district court therefore properly determined that the MWMA preempts appellants' proposed city charter amendment to require advance voter approval of a municipality's statutory establishment of organized collection.

**Affirmed.**